182 N.J. Super. 365 (1981)
440 A.2d 1366
JOSEPH HELFRICH, PLAINTIFF-RESPONDENT,
v.
HAMILTON TOWNSHIP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1981.
Decided December 31, 1981.
*367 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Dennis M. DeSantis argued the cause for appellant (Destribats & Hamilton, attorneys).
Richard H. Greenstein argued the cause for respondent (Fox & Fox, attorneys).
The opinion of the court was delivered by PETRELLA, J.A.D.
This appeal presents the single issue of whether the trial court erred in holding that N.J.S.A. 52:27D-126, as amended by L. 1979, c. 394 § 1, effective February 6, 1980, requires that plaintiff be appointed plumbing subcode official in Hamilton Township.
Plaintiff instituted an action in lieu of prerogative writs after the municipality redesignated his position in 1977 from Chief Plumbing Inspector to Senior Plumbing Inspector and at the same time promoted one Henry White from Assistant Chief Plumbing Inspector to Senior Plumbing Inspector. All the plumbing inspector titles were Civil Service positions. Thereafter White was appointed the plumbing subcode official, a position authorized in the State Uniform Construction Code Act (N.J.S.A. 52:27D-119 to 141) (the act). On appeal to the Civil Service Commission (Commission) plaintiff obtained an order reinstating *368 him to his former position of Chief Plumbing Inspector with back pay on the basis that the municipality's alleged reasons for his demotion would have constituted good cause and hence, was required to be in accord with the procedures prescribed by Title 11 of the Revised Statutes and Civil Service rules. The Commission concluded that it did not have jurisdiction to determine the issue of the appointment as plumbing subcode official but deferred to the Commissioner of the Department of Community Affairs, who had authority to implement and enforce the act. By letter dated August 14, 1979 the Chief of the Bureau of Construction Code Enforcement in the Department of Community Affairs advised the mayor of defendant Hamilton Township that by virtue of plaintiff's reinstatement as Chief Plumbing Inspector, plaintiff was entitled to appointment as plumbing subcode official under the act. Defendant declined to so appoint plaintiff and this litigation ensued.
After these events had transpired N.J.S.A. 52:27D-126, which governs appointment of subcode officials, was amended by L. 1979, c. 394.
The trial judge found that as a result of the Commission's determination, plaintiff was the Chief Plumbing Inspector and White, as Assistant Chief Plumbing Inspector, was his subordinate on June 4, 1977. The original version of the statute was unclear as to who should have been appointed plumbing code official. Thus, he considered the legislative intent and concluded that the purpose of the amendment was not to alter the existing statute but to clarify tenure and other rights of officials covered by the code. He held that the "subcode official" was the person who, prior to the effective date of the original act, had subordinate responsibility to enforce the plumbing code and that the subcode official is thus "the next subordinate to the overall chief." Because plaintiff fit that description he was within the statute and entitled to the appointment. We agree and affirm.
*369 N.J.S.A. 52:27D-126a has consistently provided that "the appointing authority of any municipality shall appoint a construction official and any necessary subcode officials to administer and enforce the code...." (Emphasis supplied). A municipality has, however, the option to accept inspections regarding compliance with the code made by a state-approved inspection authority. Subsection b provided for appointment of a construction official and subcode officials and made provision for tenure and preservation of Civil Service rights.
However, reference to "construction officials" and "subcode officials" in § 126 b, as applied to officials in office prior to the act, created some confusion and ambiguity because those terms were not in general use under prior law where the references were to building inspectors, plumbing inspectors and electrical inspectors. The act attempted to provide for continuation of tenure without adequately correlating pre-code and post-code positions. This ambiguity in the original act resulted in Civil Service rulings adverse to the Legislature's intent as subsequently expressed in connection with L. 1979, c. 394. The original language of N.J.S.A. 52:27D-126 being ambiguous with respect to appointments of subcode officials, we are thus called upon to construe that language.
N.J.S.A. 52:27D-126 governs appointment of subcode officials and was amended by L. 1979, c. 394 to be effective February 6, 1980. It now provides in pertinent part:
a. The appointing authority of any municipality shall appoint a construction official and any necessary subcode officials to administer and enforce the code and a construction board of appeals to hear and decide appeals from decisions made by said construction official and subcode officials, in the administration and enforcement of the code. Nothing herein, however, shall prevent a municipality from accepting inspections as to compliance with the code or any subcode thereof made by an inspection authority approved by the State of New Jersey pursuant to law.
b. To establish tenure rights or any other right or protection provided by the `State Uniform Construction Code Act' or Title 11 of the Revised Statutes, Civil Service, or any pension law or retirement system, the job title `construction official' shall be equivalent to that job title which, prior to the effective date of the `State Uniform Construction Code Act,' entailed the chief administrative *370 responsibility to enforce all municipal construction codes, the enforcement of which was not the responsibility of an authorized private inspection agency: and the job title `subcode official' shall be equivalent to that job title which, prior to the effective date of the `State Uniform Construction Code Act,' entailed subordinate administrative responsibility to enforce one or more of the following: building, plumbing, electrical or fire codes.
Any person, in a municipality operating under Title 11 of the Revised Statutes, who prior to the effective date of the `State Uniform Construction Code Act' held the equivalent of the job title `construction' official or `subcode' official, but who no longer holds his position as a result of a determination that his old job title was not equivalent to that of `construction' official or `subcode' official, shall be offered reappointment as a construction official or subcode official, as the case may be, and shall be granted permanent classified status in such position....
In construing a statute it is our fundamental duty to determine the purpose and intent of the Legislature. To accomplish this we may freely refer to the legislative history to ascertain the sense and meaning of the language used. Health Dep't v. Sol Schnoll Dressed Poultry Co., 102 N.J. Super. 172, 176 (App.Div. 1968). Statutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 299 (1968); Brewer v. Porch, 53 N.J. 167, 174 (1969). In general, there is a presumption against legislative intent to effect a change of substance by a revision of the law, and that presumption is not necessarily overcome by mere change of phraseology or addition or omission of words, unless there is a clear indication of a desire by the Legislature to alter the existing law. New Shrewsbury v. Block 105, Lot 11, etc., 104 N.J. Super. 360, 365 (Ch.Div. 1969), aff'd o.b. 111 N.J. Super. 550 (App.Div. 1970); Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66, 74 (Law Div. 1976).
In considering whether the act prior to the amendment effective in February 1980 required that the municipality appoint plaintiff to the plumbing subcode official position, we have considered the source statute, the circumstances leading to its amendment and the changes made in its wording in order to shed appropriate light on the legislative intent. State v. Jersey Central Power & Light, 133 N.J. Super. 375, 387 (App.Div. 1975), *371 rev'd on other grounds 69 N.J. 102 (1976). We have also considered the sponsor's introductory statement, which is part of the legislative history. Deaney v. Linen Thread Co., 19 N.J. 578 (1955). Likewise, statements of legislative committees and of persons directly involved in the legislative process are also relevant legislative history. See N.J. Pharmaceutical Ass'n v. Furman, 33 N.J. 121, 130 (1960); Data Access Systems, Inc. v. State, 63 N.J. 158, 165 (1973), and In re Lambert Estate, 63 N.J. 448, 452-453 (1973). See, also, 2A Sutherland, Statutory Construction (4 ed. 1973), at 203-204. Messages of the executive relative to the statute are also appropriate for consideration. Loveladies Property Owners Ass'n, Inc. v. Raab, 137 N.J. Super. 179, 184 (App.Div. 1975).
The act was broad, remedial legislation "to establish and provide for uniform building and construction standards and uniform enforcement policies and practices throughout the entire State." N.J. State Plumbing Inspectors Ass'n v. Sheehan, 163 N.J. Super. 398, 401 (App.Div. 1978). The sponsor's statement[1] to that act, as well as the Assembly Commerce, Industry and Professions Committee statement, are to the same effect as the expressions of legislative purposes and findings embodied in N.J.S.A. 52:27D-120 and N.J.S.A. 52:27D-122. An October 7, *372 1975 statement issued by the Governor in connection with his signing of the act said in pertinent part:
... The bill also is intended to improve the standards of code enforcement. It sets forth qualifications for local code enforcement officials, but it provides protection for those now holding office.
The amendment effected by L. 1979, c. 394, amended and supplemented N.J.S.A. 52:27D-126. The sponsor's statement to the amendatory legislation, which was introduced as Assembly Bill 3456 (1979), clearly indicated the intent of that legislation. The Assembly Municipal Government Committee Statement[2] to *373 that bill states that the amendments were in keeping with the basic intent of the act and were effected to clarify tenure and other rights of construction and subcode officials by defining those positions in terms of equivalent positions which existed prior to enactment of the act. The committee statement concluded: "It is the opinion of the sponsor, with the committee concurring that the amendments contained in this Bill are in keeping with the basic intent of the `Uniform Construction Code Act.'" The amendment also responded to rulings by the Commission that the Legislature felt were inconsistent with the purposes of the act.
Thus, N.J.S.A. 52:27D-126 b as amended now establishes "tenure rights or any other right or protection provided by the `State Uniform Construction Code Act' or Title 11...." (Emphasis supplied). A construction official is defined under the amendment as the equivalent to that job title which, prior to the effective date of the act, entailed the "chief administrative responsibility to enforce all municipal construction codes...." A subcode official is the "equivalent to that job title which, prior to the effective date of the [original act], entailed subordinate administrative responsibility to enforce one or more of the following: building, plumbing, electrical or fire codes."
To the extent that the act was ambiguous with respect to whom a municipality may appoint to its subcode official positions, L. 1979, c. 394, made it clear that the "subcode official" is equivalent to the position which, prior to the effective date of the act involved subordinate administrative responsibilities to *374 enforce, as in this case, plumbing codes. The amendment to § 126b clearly clarified the original intent and did not change the intent of the Act in that regard.
The Civil Service job descriptions support the determination of the Commission and the position of plaintiff that the Chief Plumbing Inspector supervises and takes responsibility for all corrective action. The function of the Assistant Chief Plumbing Inspector is to assist the Chief Plumbing Inspector.
Plaintiff had occupied the position equivalent to plumbing subcode official on the effective date of the act. Based on that fact and even prior to the amendment, the Department of Community Affairs, the agency designated by statute to enforce the Uniform Construction Code Act, had already determined that plaintiff was entitled to the appointment which he presently seeks. While we are not bound by the agency's interpretation of a statute, Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973), due deference can appropriately be given to the interpretation of the legislation by the administrative agency entrusted with its enforcement. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70 (1978). By virtue of the Commission's ruling of July 26, 1979, plaintiff occupied the equivalent pre-code position when defendant appointed White to the plumbing subcode official position. Therefore, plaintiff is entitled to the position of plumbing subcode official by virtue of § 126 b.
The act was clearly intended to streamline the process of obtaining construction permits and the criteria for construction by replacing local codes with a state-wide standard. Defendant's contention that the act would authorize the existence of two positions of equal power to oversee enforcement of a particular code, i.e., "Chief Plumbing Inspector" and "Plumbing Subcode Official," is clearly inconsistent with that purpose. To accept defendant municipality's argument here that the act *375 enabled it to appoint any "Senior Plumbing Inspector" to be plumbing subcode official would be to accept the proposition that a municipality could then have the Chief Plumbing Inspector and plumbing subcode positions filled by two separate individuals.[3] Such would be totally contradictory to the purpose of the original legislation which sought uniform enforcement of the code and a simplification of inspection procedures.
Affirmed.
NOTES
[1] Statement to Assembly Bill 1299 of 1974:

The `State Uniform Construction Code Act' provides for the adoption and continuous updating of a nationally recognized model construction code as well as other codes relating to construction; makes the codes mandatory for all municipalities in the State in order to insure uniform, modern construction regulations throughout New Jersey; provides for the coordination of different levels of construction regulations, permits municipal enforcement of the codes while ensuring State enforcement in the event of municipal default; makes enforcement of the codes the responsibility of the local appointed building official; provides for technical assistance from the State upon request from the municipality; strengthens the professionalism of building officials; and encourages new building techniques and results in the lowering of the costs of housing and other structures.
[2] The Assembly Municipal Government Committee Statement to Assembly No. 3456 (1979), which became L. 1979, c. 394, said:

This bill clarifies tenure and other rights of construction and subcode officials under the `State Uniform Construction Code Act' in the following manner:
1. Defines `construction official and subcode official' in terms of equivalent positions which existed prior to the enactment of the `State Uniform Construction Code Act.'
2. Specifies that construction and subcode officials in civil service municipalities shall be in the classified service.
3. Specifies that construction and subcode officials in non-civil service municipalities shall be appointed to 4-year terms with tenure being conferred upon appointment to a second consecutive term or, on or after the commencement of a fifth consecutive year of service including years of service in an equivalent job title held prior to the enactment of the `State Uniform Construction Code Act.'
4. Specifies that persons in civil service municipalities, dismissed because their job title was not equivalent to that of construction or subcode officials, shall be offered reappointment as construction or subcode official, as the case may be, and granted tenure in the classified civil service.
This bill is in response to two rulings by the Department of Civil Service:
a. That construction and subcode officials could not establish tenure on the basis of years of experience gained prior to the enactment of the `State Uniform Construction Code Act' because that law failed to define the job titles `construction' official and `subcode' official to terms of equivalent positions which existed prior to the enactment of the law.
b. That no construction or subcode official could be included in the classified civil service because the law established a 4-year term for such positions: fixed terms are legally incompatible with classified positions.
The sponsor of this bill, who was the prime sponsor of the `State Uniform Construction Code Act' and the Department of Community Affairs hold that these rulings are contrary to the intent of the initial enactment.
It is the opinion of the sponsor, with the committee concurring, that the amendments contained in this bill are in keeping with the basic intent of the Uniform Construction Code Act.
[3] We are aware that White, who had been appointed plumbing subcode official by defendant, has not been made a party to this action even though his status is obviously affected. Persons having an interest or who may be affected or bound by a decision should be joined in the litigation. This is so even though White's contentions would essentially parallel those of the municipality. Our rules also provide for intervention so that such persons may themselves seek an opportunity to present their views. See, R. 4:33. Nevertheless, it was represented to us at oral argument that White relied on the municipality to represent his interests. Under the circumstances this omission does not affect our interpretation of the statutes involved.