240 N.J. Super. 420 (1990)
573 A.2d 509
DENNIS E. WHITNEY, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ERIC D. WHITNEY, DECEASED, AND MARION WHITNEY, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
JERSEY CENTRAL POWER & LIGHT COMPANY, DEFENDANT-RESPONDENT, AND COOPER'S CYCLE RANCH, INC., AMERICAN HONDA MOTOR CO., INC., AND HONDA MOTOR CO., LTD., DEFENDANTS.
THE PENN CENTRAL CORPORATION, DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
CONTRAK, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1990.
Decided May 1, 1990.
*421 Before Judges J.H. COLEMAN, BRODY[1] and SKILLMAN.
Roger K. Bentley, II, argued the cause for appellants (Zlotkin & Bentley, attorneys; Roger K. Bentley, on the brief).
Harry V. Osborne, II, argued the cause for respondent (Evans, Burgess, Osborne & Kreizman, attorneys; Harry V. Osborne, II, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to decide whether the Landowners Liability Act (the Act), N.J.S.A. 2A:42A-2 et seq., provides immunity from suit for personal injuries resulting from a dangerous condition on a roadway within a wildlife preserve which a public utility uses for the maintenance of electric *422 transmission lines. We conclude that the Act does not apply to such a roadway and therefore reverse the grant of summary judgment in favor of defendant Jersey Central Power & Light Company (JCP & L).
The appeal arises out of a wrongful death action brought by the administrator ad prosequendum of the estate of Eric D. Whitney.[2] The decedent was killed while driving an all terrain vehicle along a former railroad right of way. At the time of the accident the rails and most of the timber ties had been removed from the center of the right of way, and it contained a clearly visible, dirt and cinder roadway on which JCP & L employees operated motor vehicles used to maintain its transmission lines. This roadway, which is approximately eleven feet wide, starts near Mercer County Route 539 and cuts through a section of the Assunpink Watershed Area, a state wildlife preserve located in Upper Freehold Township, in Monmouth County. The roadway is bisected by a creek, which is more than 10 feet below the surface of the roadway. When the right of way was used for railroad purposes, the creek was crossed by a trestle type bridge. However, the deck of the bridge was removed after the railroad discontinued use of the right of way, creating a dangerous condition which is obscured from view by a slight elevation just before the creek. No barriers or warning signs were erected to protect persons traveling along the roadway from falling into the creek.
The accident occurred at 5:55 p.m. on January 2, 1985, when the roadway was dark. The decedent and four companions were driving their vehicles at approximately 30 to 35 miles per hour. The decedent was the lead driver and the roadway was illuminated by the headlights of the vehicles. Suddenly the decedent disappeared from the view of his companions. The other drivers brought their vehicles to a safe stop and discovered *423 that the decedent's vehicle had fallen into the creek through the pilings of the partially demolished bridge. Decedent's lifeless body was later discovered floating in the creek.
This suit was subsequently brought against JCP & L and various other defendants.[3] After the completion of discovery, JCP & L renewed a prior motion for summary judgment. The trial court concluded in an oral opinion that the Act immunizes JCP & L from liability for the decedent's accident and therefore granted summary judgment in its favor.
The Act provides in pertinent part that "[a]n owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes." N.J.S.A. 2A:42A-3(a). As the Supreme Court noted in Harrison v. Middlesex Water Co., 80 N.J. 391, 397, 403 A.2d 910 (1979), "[t]he use of the word `premises' in conjunction with a reference to the posting statute (N.J.S.A. 23:7-7), without further definition, creates some unsureness of the statute's intended scope." However, the Court concluded, based on a review of the language of the Act and its legislative history, that "the kind of premises which the Legislature contemplated when it enacted the Landowner's Liability Act was primarily undeveloped, open and expansive rural and semi-rural properties." Id. at 400, 403 A.2d 910. The Court observed that:
Owners of such properties would have difficulty in defending their lands from trespassers or, indeed, even in taking precautions to render them safe for invited persons, engaging in ... energetic outdoor activities. The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. .. . The Act, in our view, would clearly go beyond these goals were it construed to grant a blanket *424 immunity to all property owners, particularly to those owning lands in densely populated urban or suburban areas, without regard to the characteristics of their properties....
We must assume that the Legislature is mindful that immunity from liability for the negligent infliction of injury upon others is not favored in the law. It leaves unredressed injury and loss resulting from wrongful conduct.... Statutes such as the Landowner's Liability Act, granting immunity from tort liability, should be given narrow range. [Id. at 400-401, 403 A.2d 910; citations omitted].
Accordingly, the Court concluded that the immunity provided by the Act did not extend to a reservoir area located in a highly populated suburban community, contrasting that area with "lands located in rural or woodland reaches where the activities of people thereon cannot be supervised or controlled and where the burden of guarding against intermittent trespassers may far outweigh any risk to such persons and the presence of such persons may be difficult to foresee and contain." Id. at 402, 403 A.2d 910.
We conclude that the roadway adjoining JCP & L power lines is not the kind of "undeveloped, open and expansive rural [or] semi rural" property, protected by the immunity of the Act as construed in Harrison. Id. at 400, 403 A.2d 910. Unlike woodlands or open fields, the roadway did not appear to be in a natural condition at the time of the decedent's accident. It was smooth, flat, straight and partially covered by cinders. Thus, it appeared to be intended for passage by vehicles and a person traveling on the roadway could reasonably expect that he would not run into a hidden ravine or other dangerous condition such as may be encountered in a forest or wilderness area. Moreover, because the roadway is only eleven feet wide and was frequently used by JCP & L employees to maintain its electric transmission lines, it would have been quite feasible for JCP & L to determine the existence of the dangerous condition and post warnings or take other appropriate action to prevent the occurrence of accidents. JCP & L's roadway was significantly different in this respect from large expanses of farmland or forest, where "[o]wners ... have difficulty in defending their lands from trespassers or, indeed, even in taking precautions to *425 render them safe for invited persons." Id. at 400, 403 A.2d 910. Additionally, the policy of the Act identified in Harrison, to encourage the owners of undeveloped land "to keep their lands in a natural, open and environmentally wholesome state," Id. at 400, 403 A.2d 910, would not be advanced by extending immunity to a maintained roadway used in the conduct of a commercial enterprise.
The trial court took the view that the applicability of the Act should turn primarily on the rural character of the area through which JCP & L's roadway passes rather than the roadway itself. The court apparently found support for this view in the part of the Harrison opinion which states that "[d]ecisions which totally disregard the use for which land is zoned, the nature of the community in which it is located, its relative isolation from densely populated neighborhoods, as well as its general accessibility to the public at large, take too expansive a view of the immunity conferred by the Legislature." Id. at 401, 403 A.2d 910. The Supreme Court made this statement in concluding that a reservoir, which probably would qualify for the immunity provided by the Act if located in an undeveloped area, does not enjoy that immunity if it is located in the middle of a highly populated suburban community. However, this does not mean that the immunity extends to an improved and regularly maintained property located in a sparsely populated area. Thus, while the immunity applies to open farmlands and woodlands, it would not apply to a barnyard where dangerous machinery is stored or to a lumberyard adjoining a forest. Such premises do not have the characteristics of the "undeveloped, open and expansive rural and semi-rural areas" to which the immunity of the Act applies, Id. at 400, 403 A.2d 910, even if they are located in relatively unpopulated areas. Likewise, we are satisfied that the public utility service road on which plaintiff's decedent met his untimely death is not the kind of premises to which the immunity of the Act was intended to apply.
*426 This conclusion is consistent with our opinion in Labree v. Millville Mfg., Inc., 195 N.J. Super. 575, 481 A.2d 286 (App.Div. 1984), in which we held that the Act extended immunity for an accident occurring in a lake. Although the lake had been created artificially by an excavation for construction purposes, Labree does not indicate that the defendant municipality assumed any responsibility for maintaining the lake after it was created or that the construction debris in the lake created a hazard which was materially different from rocks and other obstructions which occur naturally. Moreover, while our view of the intent of the Act may differ from that of the panel which decided Lauber v. Narbut, 178 N.J. Super. 591, 429 A.2d 1074 (App.Div. 1981), certif. den. 89 N.J. 390, 446 A.2d 127 (1981), we are satisfied that our interpretation is fully consistent with the views expressed by the Supreme Court in Harrison.
Finally, we note that our interpretation of the scope of immunity provided by the Landowner's Liability Act parallels the Supreme Court's recent interpretation in Troth v. State of New Jersey, 117 N.J. 258, 566 A.2d 515 (1989) of the immunities for "unimproved public property" provided by the Tort Claims Act. In holding that a dam constructed on state property was not unimproved public property within the intent of N.J.S.A. 59:4-8 and N.J.S.A. 59:4-9, the Court emphasized that the State could be subject to liability for a dangerous condition of the dam even though it would be immune from liability for a dangerous condition of the lake adjoining the dam or the surrounding nature preserve:
[O]ur determination that the Act's unimproved-property immunity does not apply to the dam itself is entirely compatible with the legislature's avowed purpose of encouraging the public to use unimproved recreational property at its own risk. Consistent with the legislature's objectives, we specifically adopt the holding of the California cases that recognize that public property may be partly improved and partly unimproved. Supra at 269 [566 A.2d 515]. Thus, our holding that Union Lake Dam is "improved" property would not foreclose the statutory immunity from applying to Union Lake and the balance of the 4,300-acre preserve. [117 N.J. at 272, 566 A.2d 515].
We reach the same conclusion in this case. JCP & L's liability for the dangerous condition of its service road is entirely *427 compatible with immunity under the Act for dangerous conditions in the surrounding nature preserve.
Accordingly, the summary judgment in favor of JCP & L is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Judge Brody did not participate in the oral argument of this appeal. However, the parties have consented to his participation in the decision.
[2] The owner of the vehicle operated by the decedent at the time of the accident, his stepmother Marion Whitney, is also a plaintiff.
[3] The claims against the other defendants have been dismissed or settled and are not material to the issues presented on this appeal.