712 A.2d 1262

LINDA TOOGOOD, PLAINTIFF–APPELLANT, v. ST. ANDREWS AT VALLEY BROOK CONDOMINIUM ASSOCIATION, VALLEY BROOK ASSOCIATES, VALLEY BROOK HOMEOWNERS ASSOCIATION, ORLEANS PROPERTY MANAGEMENT SERVICES CORPORATION, WILLIAM BOWMAN ASSOCIATES (INCORRECTLY PLED AS BILL BOWMAN ASSOCIATES), AND ORLEANS CONSTRUCTION COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 3, 1998—Decided July 1, 1998.

Before Judges KING, CUFF and FALL.

*Michael J. Weiss*, argued the cause for appellant (*Hockfield, Hasner, Weiss & Rosenberg*, attorneys; *Mr. Weiss*, on the brief).

*Brian T. Swift,* argued the cause for respondent St. Andrews at Valley Brook Condominium Association (*Jay H. Greenblatt & Associates,* attorneys; *Mr. Swift,* on the brief).

*Robert T. Zane, III,* argued the cause for respondent Valley Brook Associates (*Lezenby, Zane & Cure,* attorneys; *Mr. Zane,* on the brief).

*Michael S. Savett,* argued the cause for respondent Valley Brook Homeowners Association (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade,* attorneys; *Virginia A. Pallotto* and *Mr. Savett,* on the brief).

*Marilou Lombardi,* argued the cause for respondent Orleans Property Management Services Corporation and Orleans Construction Company (*George A. Prutting, Jr.,* attorney; *Ms. Lombardi* and *Anthony M. D'Angelis,* on the brief).

*Faith S. Steinberg,* argued the cause for respondent William Bowman Associates (*Moira J. Poper,* attorney; *Ms. Steinberg,* on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

Plaintiff Linda Toogood fell while rollerblading on a road within a residential condominium development. She appeals from the entry of summary judgment in favor of all defendants on the basis that they are immune from liability pursuant to the terms of the Landowners' Liability Act (Act), *N.J.S.A.* 2A:42A-2 to -10. We reverse.

At about 3 p.m. on Sunday, July 12, 1992, plaintiff was rollerblading on a road within a residential condominium development. She was visiting a friend who resided in one of the completed residential units. A new section of residences was in the course of construction. At the intersection of two paved roadways, plaintiff slipped and fell due to an accumulation of sand on the roadway's surface. The sand apparently came from an adjacent residential construction site.

Plaintiff named six entities as defendants. Defendant St. Andrews at Valley Brook Condominium Association is the representative of the homeowners of St. Andrews at Valley Brook, a section of the Valley Brook development. Defendant Valley Brook Associates is the developer/owner of the Valley Brook development and controlled and/or maintained the undeveloped roads in the development. Defendant Valley Brook Homeowners Association represents the interests of the homeowners who occupy the various residential sections within the Valley Brook condominium development. It is an umbrella organization of the separate condominium associations within Valley Brook, including defendant St. Andrews at Valley Brook Condominium Association. Defendants Bill Bowman and Orleans Construction Company were involved in the construction work in the vicinity of the intersection where plaintiff fell.

At the close of discovery, all defendants moved for summary judgment. They argued that the Act immunized each from liability. In granting their motions, the motion judge resorted to a literal interpretation of the language of the Act. He noted previously the Act had been applied to rural settings; however, in 1991 the Act was amended to include the phrase "whether or not improved or maintained in a natural condition" as a modifier of the word "premises." He concluded the use of the word "improved" to describe property covered by the Act meant that the Act now applied to all improved property, wherever located. Moreover, he noted that plaintiff was engaged in a "sport and recreational activit[y]" at the time of her fall. He opined that the purpose of the 1991 amendments was "to avoid imposing any obligation or liability upon improved property owners as well as properties that were, as they were defined under the prior act, limited to areas that were ... generally rural areas."

■ Plaintiff argues that the 1991 amendments were designed solely to foster the immunity from liability for owners and occupiers of rural, semi-rural and large open tracts of land. Defendants contend that the amendments effectuated a broad extension of

landowner immunity to owners and occupiers of suburban property.

Resolution of this issue requires us to examine the text of the Act, its interpretation prior to the 1991 amendments, and the legislative history of those amendments. We start with the Act in its present form.

*N.J.S.A.* 2A:42A–3a provides:

An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7–7 of the Revised Statutes, and whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes.

*N.J.S.A.* 2A:42A–2 defines various terms used in the Act; it provides:

As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing, operating or riding snowmobiles, all-terrain vehicles or dirt bikes, and any other outdoor sport, game and recreational activity including practice and instruction in any thereof. For purposes of P.L.1968, c. 73 (C. 2A:42A–2 et seq.) "all-terrain vehicle" means a motor vehicle, designed to travel over any terrain, of a type possessing between three and six rubber tires and powered by a gasoline engine not exceeding 600 cubic centimeters, but shall not include golf carts; "snowmobile" means any motor vehicle, designed primarily to travel over ice or snow, of a type which uses sled type runners, skis, an endless belt tread, cleats or any combination of these or other similar means of contact with the surface upon which it is operated, but does not include any farm tractor, highway or other construction equipment, or any military vehicle; "dirt bike" means a motor powered vehicle possessing two or more tires, designed to travel over any terrain and capable of travelling off of paved roads, whether or not such vehicle is subject to registration with the Division of Motor Vehicles.

The term "premises" in Section 3a is not defined. In *Boileau v. DeCecco*, 125 *N.J.Super.* 263, 310 *A.2d* 497 (App.Div.1973), *aff'd o.b.*, 65 *N.J.* 234, 323 *A.2d* 449 (1974), this court was called upon to interpret the term "premises" following an amendment to the Act in 1968. The Legislature amended the Act as originally enacted by removing the language "agricultural lands and woodlands" and adding the word "premises." We concluded that this change of language was not intended to enlarge the protected class of

landowners to suburban landowners. *Id.* at 267, 310 *A.*2d 497. Rather, we held that this change was "intended to better define, and perhaps somewhat broaden, the protected class originally specified." *Ibid.*

This interpretation was endorsed again in *Harrison v. Middlesex Water Co.,* 80 *N.J.* 391, 403 *A.*2d 910 (1979). Justice Handler stated

that the word "premises" as used in the statute was not intended to include suburban homeowners within the class of protected landowners, but rather was intended to bring within the ambit of the Act's protection only those owners of rural or semi-rural tracts of land on whose property the enumerated activities occurred.

[*Id.* at 397, 403 *A.*2d 910.]

In other words, the Court said that it continued to adhere to the view "that the Act does not grant immunity from liability to the owners or occupiers of land situate ... in residential and populated neighborhoods." *Ibid.* The Court also opined that the Legislature contemplated extending immunity only to landowners of primarily undeveloped, open and expansive rural and semi-rural tracts of land. *See Labree v. Millville Mfg., Inc.,* 195 *N.J.Super.* 575, 481 *A.*2d 286 (App.Div.1984).

Since 1962, some form of immunity for landowners has been recognized by statute. At no time has the Legislature defined the term "premises." The Legislature is deemed knowledgeable of judicial interpretations of its enactments. Its failure to disagree with the long-standing judicial interpretation of the term and its consequent limitation of the scope of the immunity afforded by the Act are powerful evidence that the Legislature agrees with the interpretation of "premises" offered by the Court. *See White v. Township of N. Bergen,* 77 *N.J.* 538, 555–56, 391 *A.*2d 911 (1978).

Defendants counter by arguing that the addition of the language "whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise" expands the meaning of "premises." However, our understanding of the legislative history of the 1991 amendments, which introduced this language, per-

424

suades us that the amendments were designed to reinforce the long-standing interpretation of that term rather than to expand its meaning.

Although the report of the Assembly Committee which relates the purpose of the amendments does not refer directly to a specific case, it is apparent that the 1991 amendments to the Act were in direct response to a 1990 decision of this court, *Whitney v. Jersey Cent. Power & Light Co.*, 240 *N.J.Super.* 420, 573 *A.2d* 509 (App.Div.), *certif. denied,* 122 *N.J.* 376, 585 *A.2d* 381 (1990). In *Whitney,* plaintiff's decedent was killed while driving an all-terrain vehicle along a former railroad right of way in the Assunpink Watershed Area, a State wildlife preserve located in western Monmouth County. Jersey Central Power & Light Company (JCP&L) had converted the railroad right of way to a roadway and maintained it to gain access to power lines which traversed the wildlife area. Focusing on the improved nature of the roadbed and its use in conjunction with a commercial activity, we held that JCP&L was not immunized by the Act.

An examination of the language added to the Act in 1991 reveals that it tracks the reasons utilized by this court to deny immunity to JCP&L. This conclusion is reinforced by the statement of the Assembly Judiciary, Law and Public Safety Committee which accompanied Assembly Bill No. 4678 (*L.* 1991, *c.* 496). It provides:

This bill clarifies that statutory provisions which limit landowners' liability under certain circumstances for sporting or recreational activities also extend to the operation of a snowmobile, all-terrain vehicle or dirt bike ... The bill amends the definition of "sports and recreational activities" under the Landowners' Liability Act, *N.J.S.A.* 2A:42A-2 *et seq.* to specifically include operation of snowmobiles, all-terrain vehicles or dirt bikes within that definition. The bill provides that the duty to keep the property safe as provided for in *N.J.S.A.* 2A:42A-3 applies whether the property is in a natural or improved state or whether there is a commercial enterprise on the property. That duty is limited by *N.J.S.A.* 2A:42A-4 which is not amended by this bill. The bill makes similar changes with regard to horticultural and agricultural lands pursuant to *N.J.S.A.* 2A:42A-6 which currently extends limited liability for operation of motorized vehicles or horseback riders to clarify that snowmobiles, all-terrain vehicles and dirt bikes are covered. The bill indicates that the provisions shall be liberally construed to serve as an inducement to permit persons to use the property for recreational activities.

■ A legislative committee's statement of the purpose of a proposed bill, including the nature and effect of the measure, is a highly persuasive indication of legislative intent. *See Helfrich v. Hamilton Township*, 182 *N.J.Super.* 365, 440 *A.*2d 1366 (App.Div. 1981); 2A *Sutherland Statutory Construction* § 48.06 (5th Ed.1992). As stated by the bill's proponents, the purpose of the legislation was not to expand the scope of the premises subject to the Act but to enhance and remove impediments to the immunity already afforded to rural and semi-rural tracts of land.

This interpretation is consonant with the result, although not necessarily the reasoning, of *Weber v. United States*, 991 *F.Supp.* 694 (D.N.J.1998). In this case, the federal district court interpreting New Jersey law held that the Act applied to a thirty-five acre park in Fort Dix in which playground equipment had been erected. It was uncontested that the park was in a large open area of the military reservation and the general public was allowed to enjoy this park. *Id.* at 695. Maintenance of an open tract of land and allowance of access by the general public for passive or active recreational purposes are precisely the types of conduct the Legislature seeks to encourage. We disagree, however, with the federal judge's conclusion that the Legislature's statement that the Act is to be liberally construed, *N.J.S.A.* 2A:42A–5.1, announced a departure by the Legislature from the narrow interpretation of "premises" announced in *Harrison*.

*N.J.S.A.* 2A:42A–5.1 provides:

The provisions of P.L.1968, c. 73 (C. 2A:42A–2 et seq.) shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities.

This provision is part of the general amendments to the Act in reaction to *Whitney* and must be read in that context. *Whitney* was a case which unnecessarily restricted the immunity afforded to landowners of rural and semi-rural or open tracts of land by focusing on the activity and the presence or absence of improvements on the rural or semi-rural land. The 1991 amendments to the Act are clearly designed to focus the inquiry on the dominant

character of the land and to account for the evolving types of activities considered recreational pursuits. Nothing in the language of the Act or its legislative history suggests these amendments were intended to radically alter the law of premises liability by extending immunity to suburban or urban landowners.

Based on this textual analysis and the legislative history of the amendments, the motion judge's interpretation of the amendments to the Act was too broad. We conclude the Act, as amended, does not immunize the owners and occupiers of suburban residential property and reverse the summary judgments entered in favor of each defendant. Several defendants offered alternative bases for summary judgment. The motion judge did not rule on these arguments. We, too, will not address these arguments. These defendants are not precluded from renewing these arguments on remand.

Reversed and remanded.