**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5300-18T1

TERI TOMPKINS,

 Plaintiff-Appellant,

v.

COUNTY OF MERCER,
and MERCER COUNTY PARK
COMMISSION,

 Defendants-Respondents.

_____

Argued telephonically May 12, 2020 –
Decided August 12, 2020

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0914-18.

Rachel E. Holt argued the cause for appellant (Rebenack, Aronow & Mascolo, LLP, attorneys; Craig M. Aronow, of counsel; Rachel E. Holt, on the briefs).

John K. Maloney, Assistant County Counsel, argued the cause for respondents (Paul R. Adezio, Mercer County Counsel, attorney; John K. Maloney, on the brief).

PER CURIAM

Plaintiff Teri Tompkins appeals from the July 19, 2019 Law Division order granting the summary judgment dismissal of her complaint against defendants Mercer County Park Commission and Mercer County. We affirm.

The facts of this case are relatively simple and undisputed. On September 20, 2017, plaintiff brought her dog and grandson to the Mercer County Dog Park for an "outing." After five minutes of playing fetch with her dog and walking around in the dog park, plaintiff stepped into a hole, injuring her left foot. According to her orthopedic surgeon, plaintiff sustained "[l]eft foot comminuted oblique displaced fractures of the distal shafts of the second and third metatarsals with superficial peroneal nerve injury," with resulting "loss of motion and residual stiffness."

On April 30, 2018, plaintiff filed a complaint against defendants alleging they negligently maintained their premises, causing plaintiff to suffer severe permanent bodily injuries. On May 16, 2018, defendants filed an answer asserting fifteen affirmative defenses.

At his deposition, Luis Reyes, the Deputy Director for the Mercer County Park Commission's Park Rangers admitted he received complaints of holes in the dog park. He stated Robert Doherty, the Supervisor of Mercer County Parks

Maintenance, told him the dog park was closed on the day of plaintiff's injury for maintenance issues. According to Reyes, there was a sign posted at the entrance of the park stating the dog park was closed. He acknowledged the hole at issue was a dangerous condition.

Doherty was also deposed and acknowledged the hole on the date of the incident was a hazard to individuals visiting the dog park. He confirmed it was the responsibility of his department to fill any holes that may appear upon receiving notice of them. He explained his department entered the dog park every morning, checked the area, removed trash, and provided any general cleanup. He acknowledged he received about three to four complaints a year concerning holes in the dog park; however, he did not recall if a person was ever injured in the dog park because of a hole. He believed a sign indicating the dog park was closed would have been posted a week before the day of the closure, but acknowledged the dog park was not physically closed.

David Buxton, the director of the park rangers for the Mercer County Park Commission, was also deposed. He explained park rangers were required to log their daily patrols; however, the park rangers working on the day of the incident did not indicate in their logs they patrolled the dog park.

A-5300-18T1

At the conclusion of discovery, defendants filed a motion for summary judgment. Following oral argument, the judge granted defendants' motion and dismissed plaintiff's complaint with prejudice. In pertinent part, the judge ruled defendants were immune under the Landowners Liability Act[1] (LLA) because the Mercer County Dog Park constituted a recreation facility. The judge explained, "Assuming the facts proposed by plaintiff are true, the dog park is a recreation facility as defined in N.J.S.A. 2A:42A-2. Therefore, defendant[s are] immune and the case is dismissed."

This appeal followed, with plaintiff arguing "the trial court erred as a matter of law in granting [d]efendants' motion for summary judgment as there exists a genuine issue of material fact as to whether [d]efendants are immune from liability under the [LLA]."

I

When reviewing an order granting summary judgment, we "employ the same dismissal standards governing the trial court." Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016)). Rule 4:46-2(c) states that summary judgment should be granted where the motion record "show[s] that there is no genuine issue as to any

---

[1] N.J.S.A. 2A:42A-1 to -10.

material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

The rule also states that "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Furthermore, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

The LLA was intended to shield from liability private owners of rural or semi-rural lands used by the public for sport and recreational activities. Harrison v. Middlesex Water Co., 80 N.J. 391, 399-401 (1979). In pertinent part, the LLA provides:

> An owner . . . of premises . . . whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, <u>owes no duty to keep the premises safe for entry or use by others for sport and recreational activities</u>, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes.

A-5300-18T1

[N.J.S.A. 2A:42A-3(a) (emphasis added).]

The immunity applies, even if the owner expressly permits entry by the public:

> An owner . . . of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.
>
> [N.J.S.A. 2A:42A-3(b).]

The statute defines "sport and recreational activities" by a non-exclusive list of pursuits and activities ranging from relatively passive picnicking, to active hunting, riding, and skiing.

> As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing, operating or riding snowmobiles, all-terrain vehicles or dirt bikes, and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.
>
> [N.J.S.A. 2A:42A-2.]

The LLA does not shield landowners from liability for their willful or malicious acts, or when the landowner received consideration from the injured party for the right to use the land.

> This act shall not limit the liability which would otherwise exist:
>
> a. For willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity; or
>
> b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State . . . .
>
> [N.J.S.A. 2A:42A-4.]

In Harrison, the Court considered whether the defendant water company was immune under the LLA from liability for the death of an individual who drowned while attempting to rescue two children, who had fallen through the ice in a lake on the company's property. 80 N.J. at 394. At the time, the LLA provided that an owner, lessee or occupant of premises, whether or not posted pursuant to N.J.S.A. 23:7-7, owed no duty to keep the premises safe or to warn of a dangerous condition when entered or used by others for sport or recreational purposes. Id. at 396 (citing N.J.S.A. 2A:42A-3).

The Court stated the history of the law, and its reference to the posting statute, indicated that "the kind of premises which the Legislature contemplated when it enacted the [LLA] was primarily undeveloped, open and expansive rural and semi-rural properties . . ." Id. at 400. The Court held that the LLA did not apply in that case because the drowning occurred

> on an improved tract situated in a highly populated suburban community. It is surrounded by both private homes as well as public recreational facilities. It is unlike lands located in rural or woodland reaches where the activities of people thereon cannot be supervised or controlled and where the burden of guarding against intermittent trespassers may far outweigh any risk to such persons and the presence of such persons may be difficult to foresee and contain. In contrast, the reservoir area here lies in a populous setting where such factors are less substantial.
>
> [Id. at 401-02.]

In Toogood v. St. Andrews Condominium Ass'n, we considered whether the LLA applied in a case where the plaintiff was injured while rollerblading on a road in a residential condominium development. 313 N.J. Super. 418, 420 (App. Div. 1998). We noted the Court in Harrison determined the Legislature intended to provide immunity to owners of "primarily undeveloped, open and expansive rural and semi-rural tracts of land." Id. at 423.

8

We additionally noted that, after the Harrison decision, the Legislature amended N.J.S.A. 2A:42A-3 and provided that the immunity applied with regard to activities on land, whether in a natural or improved state or whether the land is the site of a commercial enterprise. Id. at 424. We observed that the 1991 amendments were enacted in response to our decision in Whitney v. Jersey Central Power & Light Co., 240 N.J. Super. 420 (App. Div. 1990), where we held that the LLA did not apply to a former railroad right of way in a State wildlife preserve, which had been converted to a roadway and used to gain access to power lines. Ibid.

We said the purpose of the 1991 amendments "was not to expand the scope of the premises subject to the Act but to enhance and remove impediments to the immunity already afforded to rural and semi-rural tracts of land." Id. at 425. We additionally noted, "The 1991 amendments to the act are clearly designed to focus the inquiry on the dominant character of the land and to account for the evolving types of activities considered recreational pursuits." Id. at 425-26.

II

As a threshold matter, it is well-settled that public entities such as Mercer County Park Commission and Mercer County can be covered by the LLA. Trimblett v. State, 156 N.J. Super. 291, 294-95 (App. Div. 1977) (State covered

by LLA in wrongful death claim arising out of boating accident at State-owned Round Valley Reservoir). The Tort Claims Act provides that a public entity may avail itself of any defenses that would be available to a private person. N.J.S.A. 59:2-1(b). Consequently, the State enjoys the same protections under the LLA that are available to private property owners. Trimblett, 156 N.J. Super. at 295. That is so, even though the LLA's immunity may be broader than the protections under the Tort Claims Act itself. Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 409 (1988).

Plaintiff argues defendants cannot benefit from LLA immunity because the activity plaintiff was engaged in at the time of her injury was "not the type of 'sports and recreational activity' contemplated by the LLA." Plaintiff contends immunity is only provided to activities, which "require the injured individual to have some . . . level of physical interaction with or on the premises."

Plaintiff relies on Villanova v. American Fed'n of Musicians, Local 16, 123 N.J. Super. 57 (App. Div. 1973), where we addressed whether a county park commission was immune from liability to a musician who was injured while working at a free public concert at the park. We explained:

> Generally speaking, the activities specifically enumerated by the Legislature are more physical than

> not; are of a nature for the most part typically requiring the outdoors; and are not on the whole "spectator sports," but rather activities in which the individual using the land is himself involved. The statute thus viewed, it appears to us that in the particular circumstances of the case before us . . . the Legislature did not intend the immunity provided by this statute to apply.
>
> [Id. at 59.]

In Villanova, the plaintiff was employed to perform music and therefore was not using the land in a recreational manner, but rather intended to use the land for employment purposes. In contrast, here plaintiff was not working; instead, she was using the dog park by walking her dog on the premises, playing catch with her dog, and enjoying the dog park with her grandson. All her actions were voluntary and she was not compensated. We are satisfied that our Villanova decision does not support plaintiff's position.

In the same vein, while the statute enumerated a number of activities it deemed recreational, the breath of the LLA is broad, permitting numerous unenumerated activates that also encompass recreational activities. For example, the liberal construction provision added in 1991, along with other amendments, "focus the inquiry on the dominant character of the land and . . . account for the evolving types of activities considered recreational pursuits." Toogood, 313 N.J. Super. at 425-26. Therefore, it is clear that bringing a dog

11

and grandchild to a dog park for an outing constitutes recreational activity. Also, the Legislature specifically listed "dog training" as a recreational activity, which falls right in line with plaintiff playing fetch with her dog.

Plaintiff contends the judge erred because she was in a dog park, which is not the type of land where LLA immunity applies. She claims the dog park is in a residential area. Additionally, plaintiff argues the intent of the LLA applies only to properties that "could not possibly be adequately maintained and render[ed] safe"; here, the Supervisor of Mercer County Parks Maintenance confirmed that it was the responsibility of his department to fill the holes as soon as he received notice of them.

Notably, the text of the LLA does not define the "premises" to which it applies. Toogood, 313 N.J. Super. at 422. However, courts interpreting the Act have held that it does not apply to land located "in residential and populated neighborhoods," Harrison, 80 N.J. at 397 (1979), but was intended to provide immunity for "undeveloped, open and expansive rural and semi-rural properties." Id. at 400.

The statute was amended in 1991 to clarify that the Act applies to such rural or semi-rural land "whether or not improved or maintained in a natural condition." Toogood, 313 N.J. Super. at 423. The amendment specifically

states, "It shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." Toogood, 313 N.J. Super. at 425 (quoting N.J.S.A. 2A:42A-2).

In Weber v. United States, the federal district court held that the LLA applied to a thirty-five-acre park in Fort Dix containing "swing sets, picnic tables, barbeques, park benches, basketball courts, a large pond and a pavilion." 991 F. Supp. 694, 695 (D.N.J. 1998). The park was a large open-area on the military reservation, which the general public was permitted to use for recreational purposes. The plaintiff fell from a swing set in the park and suffered injuries. Ibid.

Plaintiff also cites Benjamin v. Corcoran, where a dog bit a child while sledding at the New Jersey's Fireman Home (the Fireman's Home), an "improved tract of land in a populated suburban area." 268 N.J. Super. 517, 531 (App. Div. 1993). An employee of the Fireman's Home who lived in a house on the property owned the dog. In reasoning that the Fireman's Home was not a covered premise, the Benjamin court described its grounds and surroundings:

> The grounds of the [Fireman's Home] are surrounded by residential lots. On the grounds there were several

buildings, including the [Fireman's Home's] administrative building and main building, two houses, and a barn.  The location where [the child] was sleigh riding when he was attacked was near the structures and driveway, and only 100 to 150 feet from the Corcoran's house.  The land was not located in a rural or woodland area.

[Ibid.]

In our view, the LLA did not apply to such "developed land in a populated suburban area."  Id. at 532.

Based on our analysis in Benjamin, we conclude the dog park must be considered in the larger context of the Mercer County Park when determining the dominant character of land; however, we conclude that Benjamin is factually distinguishable, and its reasoning leads to a finding that the dog park is a covered premise.  Unlike the land in Benjamin, the dog park is not located in a suburban area.  To the contrary, the dog park is within a much larger park that includes 2500 acres.  Only minimal residential areas surround the Mercer County Park.

In Weber, we held that the LLA applied to a thirty-five-acre park.  The park was large and open to the public for recreational activities.  In this case, the Mercer County Park is a public park, roughly 2500 acres in size, containing the dog park within it.  The park also contains seven softball fields, two baseball fields, twelve basketball courts, twenty-seven tennis courts, eleven soccer fields,

14

a boathouse, a lake, an ice rink and numerous hiking and jogging trails. The park also includes Mercer Lake, the Van Nest Wildlife Refuge, Mercer County Community College, some residences, and a golf course.

While the park has some residential housing adjacent to it, the park is not situated in a residential development, as in Toogood, and is similarly unlike the pond in Harrison, where the Court found the pond was situated in a highly populated suburban community. Plaintiff's reliance on Harrison is also misplaced because Harrison predates the 1991 amendments that mandated a liberal construction of the statute.

The 1991 amendment to the Act makes clear that it applies to improved land. N.J.S.A. 2A:42A-3(a). This result is consistent with Weber as well as other decisions applying the LLA. See e.g., Nazzaro v. United States, 304 F.Supp.2d at 605, 607 (D.N.J. 2004) (applying LLA to an obstacle course in a wooded area located in Fort Dix). Therefore, the park itself has very similar characteristics to Weber, and thus we hold is the type of land covered under the LLA.

Plaintiff also argues that defendants willfully failed to guard against the dangerous condition. Plaintiff relies on Krevics v. Ayars, 141 N.J. Super. 511 (Law Div. 1976). As previously noted, the LLA does not shield landowners

from liability for their willful or malicious acts, or when the landowner received consideration from the injured party for the right to use the land.

> This act shall not limit the liability which would otherwise exist:
>
> a. For willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity; or
>
> b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State . . . .
>
> [N.J.S.A. 2A:42A-4.]

The LLA does not define "malicious" or "willful." In Krevics, while not attempting to define the terms, the court denied the defendant's motion for summary judgment in the face of evidence that the defendant "caused or consented to the placement of a cable across the motorbike trail" that had been used for several years on his eleven acre, undeveloped woodland tract in Salem County. Id. at 514. There were no warning signs, and at dusk, the cable was difficult to see. Ibid. The plaintiff came in contact with the cable and suffered serious injuries. Ibid. The court found that the LLA did not protect the defendant because "[t]he hazardous condition was created by [the] defendant. The erection of the cable was certainly a willful act. In view of [the] defendant's

16

knowledge of the use of the motorbike trail, and considering the type of hazard erected, [the] defendant's action may even be construed as malicious." Id. at 516.

Applying the definitions suggested by the court in Krevics, we see no basis in the record to find that defendants acted maliciously or willfully in failing to warn about the hole, or to guard against the danger that it posed. At most, plaintiff presents circumstantial evidence that defendants, in the course of attempting to close the park for ongoing maintenance, was on notice that the hole existed. Yet, that falls far short of the necessary showing of willfulness or malice.

In a large park, there are numerous dangerous conditions, natural and manmade, known and unknown, that the park employees realistically cannot immediately address because of competing demands on State resources. Therefore, unlike Krevics, where a cable was deliberately placed across a motorbike path, here, a hole in a dog park that went undetected and unfilled does not constitute willful or malicious activity.

Because we find defendants have immunity from liability under the LLA, defendants are also immune from claims under the TCA. See N.J.S.A. 59:2-1(b) (a public entity's liability is subject to any immunity the entity may have);

Rochinsky v. State of N.J. Dep't of Transp., 110 N.J. 399, 409 (1988) (holding that under N.J.S.A. 59:2-1(b), common law and statutory immunities not contained in the TCA prevail over the TCA's liability provisions).

Any arguments not specifically addressed lack sufficient merit to warrant discussion in a written opinion. Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5300-18T1