LOUISE T. HARRISON, ADMINISTRATRIX *AD PROSEQUENDUM* OF THE ESTATE OF WILLIAM B. HARRISON, DECEASED, PLAINTIFF-APPELLANT, v. MIDDLESEX WATER COMPANY AND TOWNSHIP OF CLARK, NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued February 21, 1979—Decided June 28, 1979.

392

*Mr. William J. Gearty* argued the cause for appellant,

*Mr. Robert T. Hueston* argued the cause for respondent Middlesex Water Company (*Messrs. Hueston, Hueston* and *Sheeran,* attorneys).

*Mr. Michael John Stone* submitted a letter in lieu of brief on behalf of respondent Township of Clark (*Messrs. Hoagland, Longo, Oropollo* and *Moran,* attorneys).

The opinion of the court was delivered by

HANDLER, J. This Court is presently called upon to interpret the scope of the New Jersey Landowner's Liability Act, *N. J. S. A.* 2A:42A-2 *et seq.* The question raised by this appeal is whether that Act immunizes the defendant Middlesex Water Company from liability for the death of plaintiff's decedent who drowned while attempting to rescue two children who had fallen through an ice covered lake located on defendant's property.

I

The appeal, arising from a wrongful death action brought by decedent's wife against Middlesex Water Company (Middlesex or Company) and the Township of Clark, comes before the Court on a motion for involuntary dismissal granted at the close of plaintiff's case. Accepting as true all the evidence which supports the plaintiff's position together with all the legitimate inferences therefrom (*R.* 4:37-2(b)) the following factual picture emerges.

Middlesex Water Company owns and maintains a reservoir and water treatment plant located in the Township of Clark. The reservoir was created by the defendant and its predecessor in 1907 through the damming of a minor tributary of the Rahway River. This resulted in the creation of a man-made lake covering 94 acres in what was then a relatively unpopulated area. A treatment plant and pumping station lie adjacent to the reservoir. Surrounding the lake are 42 acres of land also owned by Middlesex. The 136 acres are currently situated in an area zoned for residential use. The surrounding area has become heavily populated and the property is bounded by a regional high school, several athletic fields, a tennis court, two social clubs and a number of private homes whose rear lots extend almost to the edge of the lake.

The greater part of Middlesex Water Company's property is unfenced, with the result that the lands have been openly accessible to and used freely and frequently by the public.

The reservoir waters have long been utilized for swimming and ice skating by the residents of Clark Township and the public generally. From 1959 to 1969 Middlesex hired special employees to patrol the reservoir to exclude trespassers, but that practice was subsequently discontinued. Other than the posting of "no trespassing" signs the defendant takes no specific steps to guard against trespassers nor does it take any other measures to regulate or supervise the public's use of its land and waters. On the day of the drowning, close to 100 people were on the ice.

On February 6, 1972 plaintiff's decedent died in the reservoir waters while attempting to rescue two 15 year old boys who had fallen through the ice while skating. That day was the first of the season on which the water had frozen sufficiently to permit ice skating; as recently as the previous day there had been patches of thin ice and areas of open water in the reservoir. No signs of warning or danger were posted and no persons were assigned to patrol the area or supervise the ongoing activities Approximately two hours before the accident occurred, snow had begun to fall, covering the frozen surface of the lake and making it difficult to determine the thickness of the ice. Responding to the boys' cries for help, decedent was able to rescue one youth while the other drowned with decedent. No rescue equipment was available to aid in the rescue attempt.

Plaintiff thereafter instituted a wrongful death action against the defendants, Middlesex Water Company and the Township of Clark. With regard to the first defendant, Mrs. Harrison contended that since Middlesex created and maintained the reservoir the company was obligated to prevent infants from skating when the ice was unsafe and to supply rescue equipment for use should any mishap occur. With regard to the Township, plaintiff contended that it failed properly to police and supervise the property. Middlesex denied that it owed any duty of care to plaintiff's decedent and also asserted that it was immune from suit by virtue of *N. J. S. A.* 2A:42A-2 to -5.

After the close of plaintiff's case at trial, held before a jury, Middlesex moved for an involuntary dismissal. The trial court granted the motion on the ground that the thin ice on the surface of the reservoir was not a dangerous artificial condition which gave rise to a duty to prevent persons from entering onto the land. The court also granted the Township's motion for judgment pursuant to *R.* 4:40-1. The Appellate Division affirmed. 158 *N. J. Super.* 368 (1978). However, as to Middlesex, the appellate court held that the Landowner's Liability Act, *N. J. S. A.* 2A:42A-2 *et seq.*, "provides that the water company owes no duty to keep the premises safe from anyone using the premises for sport and recreational activity including skating". *Id.* at 378. This Court granted plaintiff's petition for certification limited solely to the question of the liability of defendant Middlesex Water Company, 78 *N. J.* 402 (1978).

## II

The New Jersey Landowner's Liability Act provides, in relevant part, that:

a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes * * *.

[*N. J. S. A.* 2A:42A-3].

The statute further provides that:

b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

[*Id.*].

In addition, *N. J. S. A.* 2A:42A–2 defines "sport and recreational activities" to mean and include:

\* \* \* hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.

■ Since the enactment of the amendment to the Landowner's Liability Act in 1968 this Court has considered the meaning of that statute only once, in *Boileau v. De Cecco,* 65 *N. J.* 234 (1974). In that case, we affirmed without opinion the decision of the Appellate Division, 125 *N. J. Super.* 263 (App. Div. 1973). The controversy there involved a wrongful death action brought against the defendant owner of a backyard swimming pool into whose shallow end the deceased had dived, thereby sustaining fatal injuries. The Appellate Division held that the word "premises" as used in the statute was not intended to include suburban homeowners within the class of protected landowners, but rather was intended to bring within the ambit of the Act's protection only those owners of rural or semi-rural tracts of land on whose property the enumerated activities occurred. We continue to adhere to the view that the Act does not grant immunity from liability to the owners or occupiers of land situate, as here, in residential and populated neighborhoods.

We recognize that the meaning of the language of the statute is itself not clear. The use of the word "premises" in conjunction with a reference to the posting statute (*N. J. S. A.* 23:7–7), without further definition, creates some unsureness of the statute's intended scope. The uncertainty as to the type of lands intended to be covered is not totally eliminated by the broad numeration of "sport and recreational activities" in *N. J. S. A.* 2A:42A–2. The statutory ambiguity has been witnessed by the struggles of lower courts to fashion a sensible and consistent approach in applying the Act. Compare, *e. g., Tallaksen v. Ross,* 167 *N. J. Super.* 1 (App. Div. 1979); *Magro v. City of Vineland,* 148 *N. J.*

*Super.* 34 (App. Div. 1977) ; *Odar v. Chase Manhattan Bank,* 138 *N. J. Super.* 464 (App. Div.), certif. den. 70 *N. J.* 525 (1976) ; *Krevics v. Ayars,* 141 *N. J. Super.* 511 ,(Law Div. 1976) ; *Scheck v. Houdaille Const. Materials, Inc.,* 121 *N. J. Super.* 335 (Law Div. 1972) ; *O'Connell v. Forest Hill Field Club,* 119 *N. J. Super.* 317 (Law Div. 1972). We are thus enjoined to look as best we can for the underlying intent and the overriding purpose of the Legislature in the enactment of the statute. See, *e. g., State v. Madden,* 61 *N. J.* 377 (1972) ; *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467, appeal dismissed and *cert.* den. 379 *U. S.* 14, 85 *S. Ct.* 144, 13 *L. Ed.* 2d 54 (1964) ; *DeFazio v. Haven Savings and Loan Ass'n,* 22 *N. J.* 511 ,(1956).

Frequently the examination of legislative history can illumine the search for a proper understanding of a puzzling statute. *Malone v. Fender,* 80 *N. J.* 129 (1979). The background of the Landowner's Liability Act, however, is not rich. There was no statement of purpose accompanying the bill, *Senate Bill* No. 325 (1968), which eventually was enacted into law. A review of the Act's predecessor statute, previously codified at *N. J. S. A.* 2A:42A–1, is somewhat instructive. That statute, adopted in 1962, was entitled:

An act limiting the liability of landowners of agricultural lands or woodlands for personal injuries to or the death of any person while hunting or fishing upon landowner's property.
[*L.* 1962, *c.* 107].

It provided:

No landowner of agricultural lands or woodlands shall be liable for the payment of damages suffered resulting from any personal injury to, or the death of, any person, while such person was hunting or fishing upon the landowner's property, except that such injury or deaths resulted from a deliberate or willful act on the part of such landowner.
[*Id.* § 1].

The prior Act was intended specifically to apply to owners of rural or semi-rural lands, pointedly, agricultural and wooded

tracts. The statute absolved those owning such lands from liability. It was not designed or intended to protect all landowners generally. This view is reinforced by the type of activities which would occasion tort immunity, namely, hunting and fishing, outdoor activities .which generally occur on rural or semi-rural lands. The Legislature apparently recognized the inability of the owners of such lands to control trespassers, or even to accord reasonable safeguards to invitees, who hunted and fished on their property. *Cf. Potter v. Finch & Sons*, 76 *N. J.* 499, 503 (1978); *Egan v. Erie R. Co.*, 29 *N. J.* 243, 253 (1959). The undoubted purpose of the early act was to protect such property owners otherwise unable to protect themselves.

Beginning in 1965 a series of bills were introduced to amend the earlier law. These bills would have expanded the immunity of the statute to the claims of persons who came on land, invited or not, to trap, camp and hike or for other recreation in addition to hunting and fishing. *Senate Bill* No. 25 (1965); *Senate Bill* No. 44 (1966); *Senate Bill* No. 170 (1967). While these bills inserted the word "premises", replacing the prior designation of the covered lands as agricultural lands or woodlands, there is nothing to suggest, in view of the designated activities, that the proposed amendments intended to extend immunity to all property without limit. The activities specifically named in these bills — hunting, fishing and trapping as well as hiking, camping and similar recreational use — normally occur on large tracts or areas of natural and undeveloped lands located in thinly populated rural or semi-rural areas or on property having all or most of the characteristics of such rural and semi-rural lands, particularly as to size, naturalness and remoteness or insulation from populated areas.

█ The statute finally enacted does not, in our view, depart from the purpose and policy as thus revealed. The use in the current statute of the word "premises" is in conjunction with provisions that failure to "post" such land in accordance with the posting statute, *N. J. S. A.* 23:7–1 to

–8, would not affect a landowner's immunity. *N. J. S. A.* 2A:42A–3. The mention of the posting statutes is a strong indication that the kind of premises which the Legislature contemplated when it enacted the Landowner's Liability Act was primarily undeveloped, open and expansive rural and semi-rural properties where hunting, fishing and trapping might be expected to take place. This is supplemented by the specific inclusion of horseback riding, skiing and tobogganing, in addition to other "outdoor sport, game and recreational activity." *N. J. S. A.* 2A:42A–2. These are endeavors which can be accommodated, under normal conditions, only upon large sized tracts of rural or semi-rural lands, or other lands having similar characteristics.

Owners of such properties would have difficulty in defending their lands from trespassers or, indeed, even in taking precautions to render them safe for invited persons, engaging in these kinds of energetic outdoor activities. The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. This is an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State. It is a concern well known to the Legislature and the preservation of such lands is very much an integral part of our governmental and public policy. See, *e. g., N. J. S. A.* 13:8A–1 *et seq.* (Green Acres Land Acquisition Act of 1961); *N. J. S. A.* 13:8A–19 *et seq.* (Green Acres Land Acquisition Act of 1971); *N. J. S. A.* 13:8A–35 *et seq.* (Green Acres Land Acquisition and Recreation Opportunities Act); *N. J. S. A.* 4:1B–1 *et seq.* (Agricultural Preserve Demonstration Program Act); *N. J. S. A.* 54:4–23.1 *et seq.* (Farmland Assessment Act). This purpose was assuredly intended to be served by the Legislature in structuring the current Landowner's Liability Act. The Act, in our view, would clearly go beyond these goals were it construed to grant a blanket immunity to all prop-

erty owners, particularly to those owning lands in densely populated urban or suburban areas, without regard to the characteristics of their properties.

We would not be warranted in imputing to the Legislature an intent to fashion such a broad immunity to property owners. We must assume that the Legislature is mindful that immunity from liability for the negligent infliction of injury upon others is not favored in the law. It leaves unredressed injury and loss resulting from wrongful conduct. See, *e. g., Merenoff v. Merenoff,* 76 *N. J.* 535 (1978); *cf. Tevis v. Tevis,* 79 *N. J.* 422 (1979). When the Legislature has essayed to grant or restore immunity, it tries to be circumspect and meticulous. *E. g., N. J. S. A.* 2A:53A–7 *et seq.,* following *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29 (1958) (charitable immunity); *N. J. S. A.* 59:1–1 *et seq.,* following *Willis et al. v. Dept. of Cons. & Ec. Dev.,* 55 *N. J.* 534 (1970) (governmental immunity). Statutes such as the Landowner's Liability Act, granting immunity from tort liability, should be given narrow range. *Cf. Potter v. Finch & Sons, supra* 76 *N. J.* at 502.

We cannot therefore attribute to the Legislature in this case an intent that the Landowner's Liability Act be accorded a broad application. Decisions which totally disregard the use for which the land is zoned, the nature of the community in which it is located, its relative isolation from densely populated neighborhoods, as well as its general accessibility to the public at large, take too expansive a view of the immunity conferred by the Legislature. See, *e. g., Tallaksen v. Ross, supra.* It is not reasonable to posit as a legislative objective the immunization of all landholders from liability for injuries incurred during the course of outdoor recreational activity on their property, particularly with respect to improved lands freely used by the general public located in populated neighborhoods in urban or suburban areas.

The land on which the tragic drowning occurred in this litigation was on an improved tract situated in a highly

populated suburban community. It is surrounded by both private homes as well as public recreational facilities. It is unlike lands located in rural or woodland reaches where the activities of people thereon cannot be supervised or controlled and where the burden of guarding against intermittent trespassers may far outweigh any risk to such persons and the presence of such persons may be difficult to foresee and contain. In contrast, the reservoir area here lies in a populous setting where such factors are less substantial. *Cf. Krevics v. Ayars, supra; Scheck v. Houdaille Const. Materials, Inc., supra.* We conclude therefore that Middlesex Water Company cannot assert immunity or the absence of a duty of care under the Landowner's Liability Act as a defense to the wrongful death claims asserted against it in this case.

### III

A second ground for our decision that the Act is not applicable here arises from the fact that plaintiff's decedent was not injured in the course of carrying on a sport or recreational activity. The statute states that a landholder has no duty to keep premises safe for entry or use for the defined activities. The decedent was drowned while attempting a rescue; he was engaged in a life-and-death struggle which, sadly, he lost. This activity was the very antithesis of sport and recreation and assuredly was not encompassed within the Act's purview.

As indicated earlier, the statute must be strictly construed and is not to be extended beyond its meaning. See *Potter v. Finch & Sons, supra* 76 *N. J.* at 502. It has been held that the Act does not apply to instances of injury incurred through activities not within the contemplation of the Act. For example, in *Villanova v. Am. Fed. of Musicians,* 123 *N. J. Super.* 57 (App. Div. 1973) the statutory immunity was held not to apply where plaintiff had been injured at a band concert, that activity not being of the same recreational nature as the others in the statute. *Cf.*

*Diodato v. Camden County Park Commission*, 162 *N. J. Super*. 275 (Law Div. 1978). Similar in principle is *Jasiczek v. Penna. R. R.*, 90 *N. J. Super*. 380 (App. Div. 1966), involving *N. J. S. A.* 48:12–152, a statute which grants immunity from liability to any person injured by a railroad engine or car while walking, standing or playing on a railroad. The court construed the statute restrictively, ruling it inapplicable where plaintiff, while on top of a train, came in contact with a high-voltage wire, on the theory that the injury was caused by the wire rather than the railroad car itself. In *Potter v. Finch & Sons, supra*, this Court held that *N. J. S. A.* 48:21–152 must be narrowly read so that its grant of immunity applied only to the railroad itself and not its employees.

We cannot ascribe a purpose on the part of the Legislature to sanction an expansive application of the operative statute. The decedent met his death while engaging in an activity not enumerated in or contemplated by the statute. The statute does not under these circumstances bestow blanket immunity upon a property owner or abrogate its duty of care owed to a person attempting to rescue another on its lands. Defendant therefore may not assert the Landowner's Liability Act as an affirmative defense in this wrongful death action.

## IV

Because the Appellate Division found that the Landowner's Liability Act immunized the defendant, Middlesex Water Company, from liability in this case, it did not consider whether defendant did, in fact, breach any duty to plaintiff's decedent which was a proximate cause of his death. Since this aspect of the appeal was not fully or adequately presented to the Court, we remand the case to the Appellate Division on this matter. We do not retain jurisdiction.

Accordingly, the case is reversed and remanded to the Appellate Division.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.