JOHN JOZEFYK, PLAINTIFF–APPELLANT, v. GEORGE E. WALKER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 24, 1989—Decided June 26, 1989.

---

Before Judges KING, BRODY and ASHBEY.

*Genora Rosypal,* argued the cause for appellant.

*Melville D. Lide,* argued the cause for respondent (*Radano & Lide,* attorneys).

The opinion of the court was delivered by

KING, P.J.A.D.

This case turns on whether the defendant George Walker was an "occupant" of the premises where the accident occurred so as to enjoy the immunity provided by the Landowner's Liability Act, *N.J.S.A.* 2A:42A–2 to –7, *L.* 1968, *c.* 73.

The accident happened on April 28, 1984 when the plaintiff, John Jozefyk, was visiting a cabin built and maintained by his grandfather, George Walker. Plaintiff was a member of a church group from Millville which was using the cabin while on

a recreational trip with Walker's permission and in his company. The group included plaintiff's father, grandfather, and some young people from the church. There was no payment made for using the premises. The purposes of the trip according to defendant Walker included "hunting, boating, camping out, and hunting for fossils and Indian artifacts."

The plaintiff claimed that he fell from the catwalk of the cabin while using a "boot jack" to remove his muddy boots. He claimed that negligent maintenance of the facility caused his injury. Defendant moved for summary judgment, asserting the immunity of the Landowner's Liability Act, and prevailed.

On this appeal, plaintiff claims that defendant was not an "occupant" of the premises within the intent of the Act because he had no legal title or lease to the premises. Judge Kleiner concluded that Walker was an "occupant" of the premises within the meaning of the Act. All agree that the property was used for the recreational purposes contemplated by the Act at the time of the accident.[1]

The Act, as pertinent to this case, states:

a. An owner, lessee or *occupant* of premises, whether or not posted as provided in section 23:7–7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes;

b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted. [Emphasis supplied; *N.J.S.A.* 2A:42A–3.]

---

[1] *N.J.S.A.* 2A:42A–2 states:

As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, toboganning and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.

Walker had neither legal title nor a leasehold interest in the cabin which he built in about 1934 in what was then unclaimed tidal marsh land. The cabin rests on what is today State-owned tidal marshlands in the Egg Island Wildlife Sanctuary at the mouth of the Oranoaken Creek, several miles south of Fortescue on the Delaware Bay. A pier and catwalk surround the cabin. Plaintiff fell from this structure into the marshland and was injured.

Born in 1911, Walker has used the cabin, which he built in the 1930's, continuously for sport and recreational purposes. After destruction by fire in 1972 he rebuilt it. In 1950 the State took control over the area of the bay where Walker's cabin and five others are located. However, to Walker's knowledge, the State has never taken any steps to evict him from the cabin or to tear it down. Also, according to Walker, the State is well aware of the presence of his cabin as "State Game Wardens have regularly stopped at the cabin for years and it is shown as a landmark on nautical maps prepared by the State."

The cabin is accessible only by boat. A power-boat ride from Fortescue, seven or eight miles to the north and the nearest populated area, takes about 45 minutes. The plaintiff himself had visited the premises "a hundred times" for recreational purposes since he was a small boy.

Against this background, Judge Kleiner reached these conclusions in ruling on the summary judgment motion:

I clearly believe that this property—that Mr. Walker is an occupant under the Statute, that his status—his original status of how he became an occupant is not the issue, it's whether or not he's an occupant. If the legislature wanted to dignify occupant by saying a lawful occupant, they could have done so. They merely said occupant. Even if he were a trespasser fifty years ago, the fact that he's occupied the property in plain view of the owner, the lawful owner for fifty years, the fact that his property, the cabin is placed on the maps prepared by the State who's the lawful owner as a demonstrative geographic point with a reference by fisherman, boaters and users of the recreational perimeter surrounding the cabin, classifies him as, at least, a licensee, takes him out of the category of mere trespasser or an unlawful user. He obviously doesn't have the right to stay there adverse to the State should the State wish to evict him, but as long as he's there with, permissibly, either directly or impliedly, he has

the right to use that land for recreational purposes and to maintain the cabin that he erected for recreational purposes and the surrounding catwalks which facilitate the use of the cabin from the marsh. The purpose of the Landowner's Liability Act is to guarantee that the landowners and occupants of property can safely leave their property open without security, without constant inspection and by implication without the necessity of constant maintenance in order to guard against other users of the recreational land who may be damaged by the use of the recreational land. There was no question that this land is recreational, no question that undeveloped, the only development is Mr. Walker's cabin and the next cabin that you can see from perhaps, within view as what—what the deposition—I think described was five hundred yards one way, and on a clear day you can see forever, and see some other three or four cabins that exist in the marshland, miles away.

The whole nature and purpose of that cabin is to serve and benefit the recreational users of the surrounding property, and by using the cabin for recreational purposes the occupant of that cabin within the confines of the Statute deserves the protection of the Landowner's Liability Act.

We agree.

Our courts have discussed the meaning of the word "occupant" in *N.J.S.A.* 2A:42A–3 on only one prior occasion. In *Labree v. Millville Mfg., Inc.*, 195 *N.J.Super.* 575, 583 (App.Div. 1984), we rejected the claim of an excavating contractor that it was an "occupant" of a quarry from which it had excavated sufficient materials over two or three years to form an artificial lake. In *Labree,* Judge Fritz noted that our Supreme Court in *Harrison v. Middlesex Water Co.,* 80 *N.J.* 391, 401 (1979), had stated that the Landowner's Liability Act "is not designed or intended to protect everyone, that immunity is not favored in the law and that statutes such as the one in question should be given narrow range." *Labree,* 195 *N.J.Super.* at 583. He continued, "we believe use of the word 'occupant' in the statute signifies an intent to provide immunity for an entity with a degree of permanence in the occupancy, not merely one who is using the property, as was the case with Gaskill," an excavating contractor over two or three years. *Ibid.*

*Black's Law Dictionary* (5th ed. 1979), at 973, defines "occupant" as,

Person in possession. Person having possessory rights, who can control what goes on on premises. One who has actual use, possession or control of a thing. [Citation omitted.] One who takes the first possession of a thing of which there

is no owner. One who occupies and takes possession. Person who acquires title by occupancy.

The legislative intent to protect a class larger than just owners and lessees was expressed. We must give sensible content to the word "occupant." In discussing the policy underlying the Act, Justice Handler in *Harrison* wrote that owners of tracts of rural or semi-rural lands where hunting, fishing and trapping might occur,

> would have difficulty in defending their lands from trespassers or, indeed, even in taking precautions to render them safe for invited persons, engaging in these kinds of energetic outdoor activities. The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. This is an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State. It is a concern well known to the Legislature and the preservation of such lands is very much an integral part of our governmental and public policy. [80 *N.J.* at 400.]

Against this background we reject plaintiff's assertion that "there must be some sort of legal right to control the property and to restrict access to it to achieve the status of 'occupant' as contemplated by the Act." Jozefyk claims that as a "squatter," albeit a squatter for about 50 years, Walker had no possessory rights in the premises and the State could "undoubtedly succeed in an action for possession." Plaintiff asserts that our Legislature passed the Act with the intention of reducing the growing tendency of landowners, lessees and occupants to withdraw their lands from recreational access, and that "the ability to restrict access to the land is a prerequisite to the limitation of liability and accordingly the Act was not intended to apply to those who are not capable of doing so."

We accept defendant Walker's contention in which he urges that "it would be hard to conceive of a situation where an individual could have a greater 'degree of permanence in the occupancy' than Walker had with respect to the land where his cabin was constructed and maintained." Walker was without doubt an "occupant" enjoying the implied, if not express, permission of the State. Affording immunity to Walker in this

case implements the purpose of the statute. The church group, of which plaintiff was a member and to which Walker allowed access and accompanied on the day of the accident, was on a recreational outing in a remote, undeveloped marsh area, accessible only by boat. Walker could have effectively denied them physical access to the property if he wished. Imposition of liability would doubtless discourage his occupancy and maintenance of the property and his permission to others to use it. Even if Walker is considered only a "squatter," he was one with a degree of tolerance from the State and a permanence of occupancy who should be afforded the benefit of the Act because he was within the legislative purpose for which the immunity was designed on the day of this occurrence.

Affirmed.