NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2574-22

ANDRIS ARIAS,

     Plaintiff-Appellant,

v.

COUNTY OF BERGEN,

     Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **July 17, 2024** |
| **APPELLATE DIVISION** |

Argued on April 30, 2024 – Decided June 14, 2024

Before Judges Mayer, Paganelli and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6633-22.

Alex S. Capozzi argued the cause for appellant (Brach Eichler, LLC, attorneys; Alex S. Capozzi, on the briefs).

David Mateen, Assistant County Counsel, argued the cause for respondent (Thomas J. Duch, Bergen County Counsel, attorney; David Mateen, on the brief).

Tyrone Frederick Sergio argued the cause for amicus curiae New Jersey Association for Justice (Britcher, Leone & Sergio, LLC, attorneys; E. Drew Britcher, on the brief).

The opinion of the court was delivered by

MAYER, P.J.A.D.

Plaintiff Andris Arias appeals from a March 20, 2023 order dismissing her complaint against defendant County of Bergen (Bergen) without prejudice. We affirm.

We recite the facts from the motion record. On April 24, 2021, plaintiff fell in a hole while rollerblading on a paved pedestrian pathway in Van Saun County Park (Park). The Park, established in 1960,[1] consists of 130 acres of land in Paramus. It provides recreational amenities free of charge to the public, including athletic fields, catch-and-release fishing, bicycling and walking paths, and picnic facilities.

On December 13, 2022, plaintiff filed a complaint against the County, alleging negligence and seeking damages for injuries she suffered from her fall.[2] About a month later, in lieu of filing an answer, the County filed a motion to dismiss the complaint for failure to state a claim under Rule 4:6-2(e). The County asserted immunity under the Landowners Liability Act (LLA), N.J.S.A. 2A:42A-2 to -10. The County argued the LLA "bar[red] plaintiff's claim for negligence" because: (1) the County was presumptively entitled to immunity;

---

[1] We take judicial notice of the Park's establishment in 1960. See N.J.R.E. 201(b)(2).

[2] After the County filed its motion to dismiss, plaintiff amended her complaint and included a photograph depicting the hole where she fell.

and (2) "there [were] no facts alleged in [plaintiff's] complaint that [her] injury was caused by [the County's] willful or malicious conduct."

In opposing the County's motion, plaintiff argued the LLA was intended "to apply to rural and semi-rural tracts of land" and "was never intended to apply to residential and suburban neighborhoods." Because the Park contained "buildings, structures, [and] amenities" within a "densely populated suburban neighborhood . . . surrounded by residential housing," plaintiff asserted the County was not entitled to immunity under the LLA.

The judge entered a March 20, 2023 order granting the County's motion and dismissing plaintiff's complaint without prejudice for failure to state a claim. In his decision, placed on the record on that same date, the judge explained:

> Plaintiff's contention that the [LLA] does not apply because Paramus is densely populated and because the [P]ark is surrounded by residential areas . . . is not persuasive. Plaintiff was . . . not injured in a residential area. She was injured in a . . . large 130-acre County park. There's no reason why the [LLA] would not apply to this County park.
>
> Plaintiff's contention that the [LLA] does not apply because there are buildings in the [P]ark is inconsistent with the statute. The [LLA] expressly provides that it applies even if the premises [are] improved.

The judge concluded, "[t]o the extent courts have read into [the LLA] certain limitations relating to urban or residential areas, those limitations have no application here."

The judge further found plaintiff's complaint "d[id] not allege that the County may be held liable for willful or malicious failure to guard or warn against the dangerous condition and certainly d[id] not allege any facts that could support such a [conclusion]." The judge observed the photograph annexed to plaintiff's amended complaint "appear[ed] to [depict] an area where the asphalt was worn away over time . . . and, arguably, in need of repair." However, the judge found "no basis to conclude that the County created [that] condition."

Regarding dismissal of plaintiff's complaint without prejudice, the judge stated:

> Based on the allegations of [her] complaint, [] plaintiff has no basis to allege willful or malicious conduct that would create an exception to immunity under the [LLA].
>
> . . . .
>
> [][P]laintiff may seek leave to file an amended complaint within [forty-five] days if there's a good faith basis to do so. But under the circumstances and based on what I've seen so far, I'm not giving [] plaintiff leave to—to file an amended complaint. [] [P]laintiff . . . can move for leave to file an amended complaint. I want the County to be able to take a look at that and potentially oppose the motion if . . . appropriate.

On appeal, plaintiff contends the judge erred in finding the County entitled to immunity under the LLA. She asserts the Park is located in a densely populated residential area and therefore ineligible for immunity under Harrison

v. Middlesex Water Co., 80 N.J. 391 (1979).[3]  Further, plaintiff contends the judge erred in dismissing her complaint because discovery was incomplete. Plaintiff argues the judge considered evidence beyond the pleadings and converted the County's motion to dismiss to a motion for summary judgment. We reject these arguments.

We recite the well-settled case law governing our review of motions to dismiss.  "Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo."  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).  In considering a motion under Rule 4:6-2(e), "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'"  Id. at 171 (quoting Dimitrakopoulos, 237 N.J. at 107).  The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).  However, if a trial court

---

[3]  In a September 28, 2023 order, we allowed the New Jersey Association for Justice (NJAJ) to appear as amicus curiae and participate in oral argument. NJAJ joins in plaintiff's argument that the County is not entitled to immunity under the LLA.  In addition, NJAJ claims application of the LLA in this case, and similar cases, "sets a dangerous precedent."

"considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Dimitrakopoulos, 237 N.J. at 107.

We review a trial court's grant or denial of a motion for summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Additionally, we apply de novo review of a trial court's interpretation of a statute or court rule. Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019); State v. Dickerson, 232 N.J. 2, 17 (2018).

We first address plaintiff's claim that the judge erred in determining the County was entitled to immunity under the LLA.

The LLA provides certain owners, lessees, and occupants of property owe no duty to persons injured while using such property for recreational activities and are immune from suit. N.J.S.A. 2A:42A-3. Specifically, the LLA states:

> Except as provided in [N.J.S.A. 2A:42A-4]:
>
> a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the

Revised Statutes, and whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes[.]

[N.J.S.A. 2A:42A-3(a).]

It is well established that this immunity is available to public entities. Trimblett v. State, 156 N.J. Super. 291, 295 (App. Div. 1977). However, immunity is unavailable to persons or entities under the following circumstances:

a. For willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity; or

b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State; or

c. For injury caused, by acts of persons to whom permission to engage in sport or recreational activity was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owes a duty to keep the premises safe or to warn of danger.

[N.J.S.A. 2A:42A-4.]

The LLA defines "[s]port and recreational activities" to include "hunting; fishing; trapping; horseback riding; training of dogs; hiking; camping; picnicking; swimming; skating; skiing; sledding; tobogganing; operating or riding snowmobiles, all-terrain vehicles or dirt bikes; and any other outdoor sport, game and recreational activity including practice and instruction in any of these activities." N.J.S.A. 2A:42A-2. The Legislature provided the LLA "shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." N.J.S.A. 2A:42A-5.1. However, the LLA does not define the term "premises."

Plaintiff argues the County is not entitled to immunity under the LLA because the Park, located in a residential, suburban neighborhood and generally accessible to the public, does not qualify as "premises" under the four-factor test in Harrison. She contends the judge "applied an overbroad and incorrect interpretation of the term 'premises' . . . that was inconsistent with the intent of the [L]egislature."

The County counters the LLA affords "broad protections . . . to owners, lessees and occupants of property" and asserts the "focus of the inquiry is on the dominant character of the land." The County contends the Park, a property

containing "recreational lands," is "exactly the type of premises the LLA was created to protect."

We review the history leading to the enactment of the current version of the LLA. In 1962, our Legislature enacted the LLA's predecessor statute (1962 statute), entitled "An Act limiting the liability of landowners of agricultural lands or woodlands for personal injuries to or the death of any person while hunting or fishing upon the landowner's property." L. 1962, c. 107 (codified at N.J.S.A. 2A:42A-1 and repealed by L. 1968, c. 73, § 4). The 1962 statute provided:

> 1. No landowner of agricultural lands or woodlands shall be liable for the payment of damages suffered resulting from any personal injury to, or the death of, any person, while such person was hunting or fishing upon the landowner's property, except that such injury or deaths resulted from a deliberate or willful act on the part of such landowner.
>
> [Ibid.]

The 1962 statute "was intended specifically to apply to owners of rural or semi-rural lands, pointedly, agricultural and wooded tracts." Harrison, 80 N.J. at 398-99. Because the owners of these lands were unable "to control trespassers, or even to accord reasonable safeguards to invitees, who hunted and fished on their property," the 1962 statute was designed to "protect such property owners otherwise unable to protect themselves." Id. at 399.

In 1968, the Legislature enacted the LLA, repealing and replacing the 1962 statute (1968 LLA).  L. 1968, c. 73 (codified at N.J.S.A. 2A:42A-2 to -5). The 1968 LLA provided:

> 2.  Except as provided in section 3 of this act:
>
> a.  An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes[.]
>
>    . . . .
>
> 3.  This act shall not limit the liability which would otherwise exist:
>
> a.  For willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity; or
>
> b.  For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State . . . .
>
> [L. 1968, c. 73  § 2-3 (codified at N.J.S.A. 2A:42A-3 to -4).]

Our New Jersey Supreme Court first reviewed the LLA in Boileau v. De Cecco, 65 N.J. 234 (1974).  In that case, the plaintiff, who was invited to swim

in the defendant's backyard pool, "dove into the shallow end of the pool, fractured his neck and eventually died of the injuries sustained." Boileau v. De Cecco, 125 N.J. Super. 263, 265 (App. Div. 1973). The defendant claimed immunity under the 1968 LLA. Ibid.

In our decision, we concluded "the legislative change of the term 'agricultural lands or woodlands' to 'premises' was not intended to enlarge the protected class of landowners to homeowners in suburbia." Boileau, 125 N.J. Super. at 267. Rather, we explained the change in the statute "was intended to better define, and perhaps somewhat broaden, the protected class originally specified." Ibid. Under the facts presented in Boileau, because the defendant owned an individual suburban home rather than a large tract of open land available for use by the public, we determined "the statute [did] not confer immunity upon [the] defendant from [the] plaintiff's claim." Id. at 268. The Court affirmed our decision without opinion. Boileau, 65 N.J. at 234.

In 1979, the Court revisited the 1968 LLA in Harrison. In that case, the plaintiff's decedent drowned in a reservoir owned by the defendant "while attempting to rescue two . . . boys who had fallen through the ice while skating." Harrison, 80 N.J. at 394-95. The defendant's 136-acre property, which consisted of a ninety-four-acre reservoir and forty-two acres of surrounding land, was "situated in an area zoned for residential use" which had "become heavily

populated," with the property itself "bounded by a regional high school, several athletic fields, a tennis court, two social clubs and a number of private homes whose rear lots extend[ed] almost to the edge of the lake." Id. at 394. "The greater part of [the] property [was] unfenced, with the result that the lands ha[d] been openly accessible to and used freely and frequently by the public." Ibid. The defendant claimed immunity under the 1968 LLA, and the Court granted certification to determine whether immunity applied to "the owners or occupiers of land situate[d] . . . in residential and populated neighborhoods." Id. at 397.

The Court held the 1968 LLA did not "depart from the purpose and policy" of the 1962 statute. Id. at 399. The Court determined the "premises which the Legislature contemplated when it enacted the [LLA were] primarily undeveloped, open and expansive rural and semi-rural properties where hunting, fishing and trapping might be expected to take place." Id. at 400.

The Court supported its conclusion by referring to the 1968 LLA's "specific inclusion of horseback riding, skiing and tobogganing, in addition to other 'outdoor sport, game and recreational activity,'" which "can be accommodated, under normal conditions, only upon large sized tracts of rural or semi-rural lands, or other lands having similar characteristics." Ibid. (emphasis added) (quoting N.J.S.A. 2A:42A-2 (1968)). As the Court explained:

> Owners of such properties would have difficulty in defending their lands from trespassers or, indeed, even

in taking precautions to render them safe for invited persons, engaging in these kinds of energetic outdoor activities. The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. This is an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State. It is a concern well known to the Legislature and the preservation of such lands is very much an integral part of our governmental and public policy. This purpose was assuredly intended to be served by the Legislature in structuring the current [LLA].

[Id. at 400 (citations omitted).]

The Court stated the 1968 LLA "would clearly go beyond these goals were it construed to grant a blanket immunity to all property owners, particularly to those owning lands in densely populated urban or suburban areas, without regard to the characteristics of their properties." Id. at 400-01 (emphasis added).

The Harrison Court declined to "immuniz[e] . . . all landholders from liability for injuries incurred during the course of outdoor recreational activity on their property, particularly with respect to improved lands freely used by the general public located in populated neighborhoods in urban or suburban areas." Id. at 401. When considering immunity under the 1968 LLA, the Court stated a reviewing court must consider "the use for which the land is zoned, the nature of the community in which it is located, its relative isolation from densely

13

populated neighborhoods, [and] its general accessibility to the public at large." Ibid.

Specifically, the Court determined the defendant's property, "an improved tract situated in a highly populated suburban community . . . [and] surrounded by both private homes as well as public recreational facilities," was "unlike lands located in rural or woodland reaches where the activities of people thereon cannot be supervised or controlled and where the burden of guarding against intermittent trespassers may far outweigh any risk to such persons and the presence of such persons may be difficult to foresee and contain." Id. at 401-02. Under those circumstances, the Court held the defendant was not entitled to immunity under the 1968 LLA. Id. at 402.

Plaintiff relies heavily on Harrison in support of her argument that the County is not entitled to immunity. However, her argument overlooks some of the Court's pronouncements concerning the application of immunity under the 1968 LLA. For instance, the Harrison Court noted the 1968 LLA's immunity could be applied to recreational activities conducted not just "upon large sized tracts of rural or semi-rural lands," but also upon "other lands having similar characteristics." Id. at 400. The Harrison Court also explained the reason the LLA afforded protection from tort liability for certain premises was to "encourage such owners to keep their lands in a natural, open and

environmentally wholesome state" and represented "an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State." Ibid. As the Harrison Court noted, the protection of open space was "a concern well known to the Legislature and the preservation of such lands [was] very much an integral part of our governmental and public policy. Th[at] purpose was assuredly intended to be served by the Legislature in structuring the [1968 LLA]." Ibid. (citations omitted).

Eleven years after Harrison, we considered the 1968 LLA in Whitney v. Jersey Central Power & Light Co., 240 N.J. Super. 420 (App. Div. 1990). In that case, the plaintiff's decedent was killed while driving an all-terrain vehicle along a former railroad right of way in a wildlife preserve. Id. at 422. The defendant converted the right of way into a "smooth, flat, straight" roadway "partially covered by cinders" and "frequently used by [the defendant's] employees to maintain its electric transmission lines." Id. at 424.

We held the property in Whitney was "significantly different . . . from large expanses of farmland or forest," such that "it would have been quite feasible . . . to determine the existence of [a] dangerous condition and . . . take . . . appropriate action to prevent the occurrence of accidents." Ibid. We noted "the policy . . . to encourage the owners of undeveloped land 'to keep their lands in a natural, open and environmentally wholesome state' would not be

advanced by extending immunity to a maintained roadway used in the conduct of a commercial enterprise."  Id. at 425 (citation omitted) (quoting Harrison, 80 N.J. at 400).  Thus, we declined to grant immunity to the defendant, concluding the property was "not the kind of premises to which the [1968 LLA] was intended to apply."  Ibid.

In 1991, the Legislature amended the 1968 LLA (1991 LLA amendment). L. 1991, c. 496.  The 1991 LLA amendment read:

> An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, and whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes[.]
>
> [Id. at § 2.]

In addition, the 1991 LLA amendment expanded the definition of "sport and recreational activities" to include the operation and use of snowmobiles, all-terrain vehicles, and dirt bikes.  Id. at § 1.  Further, the 1991 LLA amendment added a new provision, N.J.S.A. 2A:42A-5.1, which read:  "The provisions of [the LLA] shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for

fear of liability, to permit persons to come onto their property for sport and recreational activities."  Id. at § 3.

The Assembly Judiciary, Law and Public Safety Committee Statement to the 1991 LLA amendment stated:

> The bill provides that the duty to keep the property safe as provided for in N.J.S.A. 2A:42A-3 applies whether the property is in a natural or improved state or whether there is a commercial enterprise on the property.  . . . The bill indicates that the provisions shall be liberally construed to serve as an inducement to permit persons to use the property for recreational activities.
>
> [Assemb. L. & Pub. Safety Comm. Statement to A. 4678 (Dec. 5, 1991).]

Following the 1991 LLA amendment, we revisited the LLA in Benjamin v. Corcoran, 268 N.J. Super. 517 (App. Div. 1993).  In that case, the plaintiff suffered an injury while sleigh riding on the grounds of a nursing home located "in a populated suburban area."  Id. at 519, 531.  Citing Harrison's finding that "the [LLA] should be given narrow range," we declined to apply immunity because the LLA "ha[d] no application to improved lands which [were] located in a populated suburban area."  Id. at 529, 531.

We next considered LLA immunity in Toogood v. St. Andrews at Valley Brook Condominium Association, 313 N.J. Super. 418 (App. Div. 1998).  In that case, the plaintiff sued the defendants as a result of a fall while rollerblading in a residential condominium development.  Id. at 420.  The defendants sought

immunity under the LLA, arguing the 1991 LLA amendment "effectuated a broad extension of landowner immunity to owners and occupiers of suburban property." Id. at 421-22. In considering this argument, we noted:

> Since 1962, some form of immunity for landowners has been recognized by statute. At no time has the Legislature defined the term "premises." The Legislature is deemed knowledgeable of judicial interpretations of its enactments. Its failure to disagree with the long-standing judicial interpretation of the term and its consequent limitation of the scope of the immunity afforded by the [LLA] are powerful evidence that the Legislature agrees with the interpretation of "premises" offered by the [Harrison] Court.
>
> [Id. at 423.]

We concluded the 1991 LLA amendment to N.J.S.A. 2A:42A-3 was enacted "in direct response" to Whitney, explaining "[a]n examination of the language added . . . reveals that it tracks the reasons utilized by this court to deny immunity" in that case. Id. at 424.

We also rejected the defendants' argument that N.J.S.A. 2A:42A-5.1 extended immunity to suburban homeowners. Id. at 425-26. As we explained:

> [N.J.S.A. 2A:42A-5.1] is part of the general amendments to the [LLA] in reaction to Whitney and must be read in that context. Whitney was a case which unnecessarily restricted the immunity afforded to landowners of rural and semi-rural or open tracts of land by focusing on the activity and the presence or absence of improvements on the rural or semi-rural land . . . . Nothing in the language of the [LLA] or its legislative history suggests these amendments were

intended to radically alter the law of premises liability by extending immunity to suburban or urban landowners.

[Ibid.]

As we held in Toogood, the 1991 LLA amendment was "clearly designed to focus the inquiry on the dominant character of the land and to account for the evolving types of activities considered recreational pursuits." Ibid. (emphasis added). We explained the LLA, "as amended, does not immunize the owners and occupiers of suburban residential property." Id. at 426. It follows that the proper inquiry for determining whether a property is entitled to immunity under the 1991 LLA amendment requires an analysis of the prevailing character of the land where the plaintiff suffered injury. See id. at 425-26.

One year after Toogood, we again examined the LLA in Mancuso ex rel. Mancuso v. Klose, 322 N.J. Super. 289 (App. Div. 1999). In that case, the plaintiff suffered an injury running across the defendant neighbor's yard. Id. at 293-94. The defendant asserted immunity under the LLA because the property, "situated on one acre" with "a wishing well and a pond," was located "in a semi-rural area." Id. at 295, 297. We rejected the defendant's argument and affirmed the trial court's decision "that immunity . . . [does] not extend to landowners . . . whose property is located in residential and populated neighborhoods even if those neighborhoods [are] part of a larger undeveloped, open, and expansive

rural and semi-rural area[]." Id. at 295. Although we declined to extend immunity in Mancuso, we did not conduct a "dominant character" of the land analysis under Toogood.

Since our decision in Mancuso, there have been several unpublished Appellate Division decisions analyzing the application of the 1991 LLA amendment. However, there is no published case clarifying the test for determining whether a "premises" is immune from suit under the LLA. We take the opportunity to elucidate the test for applying LLA immunity to property used by others for sport and recreational activities.

In enacting the LLA, the Legislature made clear that outdoor sport and recreational activities are typically accommodated upon large tracts of rural or semi-rural lands, "or other lands having similar characteristics." Harrison, 80 N.J. at 400. Since the Court's decision in Harrison, more than forty years ago, it is axiomatic that New Jersey's open spaces are diminishing rapidly.

Given that undeveloped land in this State is dwindling, by enacting the 1991 LLA amendment, the Legislature recognized a need to maintain open land for the public's enjoyment. New Jersey residents, particularly those living in cities and other densely populated communities, have limited access to nearby land for recreational and sport activities. Considering the density of development in this State, it is unlikely residents can find premises available for

sport and recreational uses not surrounded by existing residential or commercial development.

Plaintiff contends that if a large, park-like, open space tract of land existed before a development boom in a particular municipality, such property would be entitled to immunity under the LLA. However, if the municipality subsequently approved construction of housing or other development adjacent to that existing park-like premises, plaintiff argues the original open space tract of land would lose its immunity. If we adopted plaintiff's argument, immunity under the LLA would be limited to the few remaining premises in New Jersey without any nearby housing or other development. Such an interpretation would conflict with the Legislature's stated intent of promoting sport or recreational activities on "lands having similar characteristics" to rural and semi-rural property.

Moreover, plaintiff's argument focuses on the surrounding land uses rather than the dominant character of the property where a plaintiff suffered injury. Here, the Park is used by the public to enjoy the outdoors free of charge and thus satisfies the Legislature's intent in enacting the 1991 LLA amendment. Given the diminishing open tracts of land in New Jersey, we are persuaded that the four-factor test in Harrison, a case decided twelve years prior to the 1991 LLA amendment, is incongruous with the "dominant character" of the land analysis

under Toogood in determining whether a specific "premises" is entitled to immunity under the LLA.

When interpreting the language of a statute, a reviewing court "aims to effectuate the Legislature's intent." Conforti v. Cnty. of Ocean, 255 N.J. 142, 163 (2023) (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)). Because "[t]here is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose," courts "first look to the plain language of the statute." Ibid. (alteration in original) (quoting Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014)). A court must "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (alterations in original) (quoting Hildreth, 252 N.J. at 518).

However, if the court finds an "ambiguity in the statutory language . . . leads to more than one plausible interpretation," it may "turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction." Sanjuan v. Sch. Dist. of W. N.Y., Hudson Cnty., 256 N.J. 369, 379 (2024) (internal quotation marks omitted) (omission in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)). Additionally, the court may consider out-of-state published judicial decisions,

which, "although persuasive rather than binding, carry great weight." State v. Pickett, 466 N.J. Super. 270, 316 (App. Div. 2021).

Because there is no detailed legislative history or committee report regarding the 1991 LLA amendment, we consider published out-of-state judicial decisions as part of our analysis.

In Pauley v. City of Circleville, the Ohio Supreme Court reviewed Ohio's recreational use statute, which provided: "No owner, lessee, or occupant of premises . . . [o]wes any duty to a recreational user to keep the premises safe for entry or use . . . ." 998 N.E.2d 1083, 1087 (Ohio 2013) (quoting Ohio Rev. Code Ann. § 1533.181(A)). As expressly defined in the Ohio statute, the Ohio Supreme Court noted "premises" included "all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon." Ibid. (quoting Ohio Rev. Code Ann. § 1533.18(A)).

The Ohio Supreme Court noted immunity applied where a property's "essential character . . . fit within the intent of the statute." Pauley, 998 N.E.2d at 1088 (quoting Miller v. City of Dayton, 537 N.E.2d 1294, 1296 (Ohio 1989)). Because "[m]ost of the recreational activities enumerated in [the statute] are generally conducted in . . . wide open spaces, such as parks or wilderness tracts,"

the Ohio court explained a property must constitute "the true outdoors" and be "held open to the public for recreational use, free of charge" to be eligible for immunity. Id. at 1087-88 (internal quotation marks removed) (quoting Loyer v. Buchholz, 526 N.E.2d 300, 303 (1988)).

In Boland v. Nevada Rock and Sand Co., 894 P.2d 988 (Nev. 1995), the Nevada Supreme Court reviewed Nevada's recreational use statute. In that case, citing the Nevada statute, the court noted:

> Except as otherwise provided . . . , an owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for crossing over to public land, hunting, fishing, trapping, camping, hiking, sightseeing, hang gliding, para-gliding or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on the premises to persons entering for those purposes.
>
> [Id. at 990 (quoting Nev. Rev. Stat. Ann. § 41.510 (1993) (amended 1995)).]

In deciding whether to apply immunity, the Nevada Supreme Court determined "the land where [the plaintiff was] injured must be the type of land the legislature intended [the statute] to cover." Ibid. As that court explained: "Although the Nevada statute does not specify what type of property is covered, the intent of the legislature is that the property be used for recreation. Therefore, the type of property should be rural, semi-rural, or nonresidential so that it can

be used for recreation." Id. at 991; see also Brannan v. Nev. Rock & Sand Co., 823 P.2d 291, 292 (Nev. 1992) (applying the statute to "open" land).[4]

We are persuaded that the reasoning articulated by the Ohio Supreme Court in Pauley and the Nevada Supreme Court in Boland in determining landowner immunity for premises associated with sport and recreational activities is consistent with the "dominant character" of the land analysis under Toogood and the inquiry should not focus on the surrounding land uses.

Applying the dominant character of the land analysis for determining whether a "premises" is entitled to immunity under the LLA promotes the LLA's purpose to "serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." N.J.S.A. 2A:42A-5.1. Further, the dominant character of the land analysis would be in harmony with the LLA's definition of "sport and recreational

---

[4] Following the Nevada Supreme Court's decision in Boland, the Nevada legislature "expanded the kinds of owners eligible for immunity from 'an owner, lessee or occupant of premises' to 'an owner of any estate or interest in any premises, or a lessee or an occupant of any premises.'" Abbott v. City of Henderson, 542 P.3d 10, 13 (Nev. 2024) (quoting Assembly Bill 313, 68th Session (Nev. 1995), codified at Nev. Rev. Stat. Ann. § 41.510 (1995)). In Abbott, the Nevada Supreme Court held these amendments "superseded Boland's land-type limitations holding," rendering immunity applicable "to any premises." Ibid.

activities," listing activities "which can be accommodated, under normal conditions, only upon large sized tracts of rural or semi-rural lands, or other lands having similar characteristics." Harrison, 80 N.J. at 400. Additionally, the dominant character of the land analysis reconciles the 1991 LLA amendment and the Harrison factors as applied to nonresidential, true outdoor properties, consisting of large open tracts of land for sport and recreational use.

Here, applying the dominant character of the land analysis, it is undisputed the Park offers the general public access to picnic areas, playgrounds, pavilions, athletic fields, wooded areas, bicycling and walking paths, and a dog park— without charging a fee. The Park's dominant character as an open space for sport and recreational activities renders the Park the type of property entitled to the protections under the LLA. On these facts, the Park is a "premises" under N.J.S.A. 2A:42A-3(a), and the judge properly determined the County was entitled to LLA immunity.

We next consider whether the judge converted the County's motion to dismiss to a motion for summary judgment. Plaintiff asserts summary judgment was premature absent an opportunity for discovery. We disagree.

If a trial court reviewing a motion to dismiss relies on materials beyond the allegations in the complaint, the "motion [is] treated as one for summary judgment." Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super.

324, 337 (App. Div. 2006); see also R. 4:6-2 (stating where "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by [Rule] 4:46").

Here, contrary to plaintiff's assertion, the judge did not convert the County's motion into a motion for summary judgment. Both parties submitted material outside the pleadings in connection with the County's motion. However, based on our review of the record, the judge did not consider material outside the pleadings in rendering his decision.

Plaintiff's amended complaint alleged the County owned the Park, and her injury occurred on a "pedestrian pathway" in the Park. Her amended complaint also included a photograph of the pedestrian walkway, which depicted a long, wide paved path surrounded by a large wooded and grassy area. In granting the County's motion to dismiss, the judge noted the Park was available to the public and the County maintained the Park for sports and recreational activities. He also stated the hole depicted in plaintiff's photograph "appear[ed] to be the result of wear and erosion." Thus, the judge's decision did not rest on matters outside of the pleadings and he did not convert the dismissal motion into a motion for summary judgment.

Additionally, the judge granted the County's motion to dismiss without prejudice in the event plaintiff sought to include additional claims against the County or other parties alleging gross negligence, recklessness, and willful conduct to overcome immunity under the LLA. The judge stated plaintiff would be able to file a motion for leave to amend her complaint and assert claims that could preclude LLA immunity.

We also reject the NJAJ's assertion that affirming the judge's decision would "set[] a dangerous precedent." NJAJ contends application of the LLA to the Park and similar parks will preclude deserving litigants from recovering for injuries suffered while engaging in park activities.

Contrary to NJAJ's argument, persons suffering an injury on premises otherwise entitled to immunity under the LLA are not without any remedy. Both the 1968 LLA and the 1991 LLA amendment state immunity is unavailable for "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure[,] or activity" or where the injured person paid "to engage in sport or recreational activity on the premises." A plaintiff who proves a "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" will satisfy the Legislature's express exceptions to immunity otherwise accorded under the LLA. If NJAJ believes the exceptions

to immunity under the current LLA should be expanded or modified, the NJAJ may seek to address the issue legislatively.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-2574-22

29