**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2548-24

ROGER PETROCELLI and NURY
PETROCELLI,

     Plaintiffs,

v.

MIGUEL E. BUENO, ALLEN
FARNHAM, CITY OF
HACKENSACK POLICE
DEPARTMENT, and COUNTY
OF BERGEN,

     Defendants,

and

CITY OF HACKENSACK,

     Defendant-Respondent,

and

SVETLANA FAKHROUTDINOV,

     Defendant-Appellant.

_____

SVETLANA FAKHROUTDINOV
and KIRILL FAKHROUTDINOV,

Plaintiffs-Appellants,

v.

CITY OF HACKENSACK,

Defendant-Respondent,

and

COUNTY OF BERGEN,
NEW JERSEY DEPARTMENT OF
TRANSPORTATION, and
STATE OF NEW JERSEY,

Defendants.
_____

Argued March 18, 2026 — Decided June 3, 2026

Before Judges Smith, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-3902-21 and L-4220-21.

Seth D. Bader argued the cause for appellants (Bloomberg Steinberg & Bader, attorneys; Seth D. Bader, of counsel and on the briefs).

Tyler Newman argued the cause for respondent (Murphy Orlando LLC, attorneys; John W. Bartlett, Tyler Newman, and Adelin V. Sheynov, on the brief).

PER CURIAM

Plaintiffs Svetlana Fakhroutdinov and Kirill Fakhroutdinov appeal the trial court's order granting summary judgment for defendant City of Hackensack (City) and denying plaintiffs' motion for reconsideration. The trial court found plaintiffs failed to present sufficient evidence to overcome the immunity granted to the City under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :14-4, and the Landowners' Liability Act (LLA), N.J.S.A. 2A:42A-1 to -10. On appeal, plaintiffs argued that the trial court erred in granting summary judgment under both the TCA and the LLA, contending that the court misapplied the law under each statute. Further, plaintiffs argue the court erred in denying their motion for reconsideration of its order reopening and extending discovery for the City.

We affirm the orders granting summary judgment and denying reconsideration for the reasons which follow.

## I.

We view the facts from the summary judgment record in the light most favorable to the non-moving party, the plaintiffs. See Christakos v. Boyadjis, 262 N.J. 447, 467 (2026).

On July 1, 2019, Svetlana Fakhroutdinov (plaintiff) was struck by a car. The accident occurred at the southern entrance of the RiverWalk Pathway, a pedestrian pathway in Foschini Park owned by the City. At the time of the

accident, there was no crosswalk on East Salem Street to direct pedestrian traffic to and from the Park. However, there were two signs adjacent to the road, which stated "DANGER ROAD AHEAD" to warn pedestrians who were leaving the park.

Plaintiff recounted the incident in her interrogatory answers:

> When [plaintiff] reached the end of the pathway, she stopped at the curb of westbound lanes of East Salem Street Extension before crossing the street. As she was standing in Foschini Park waiting to cross the roadway, a Honda Civic vehicle driven by Allen Farnham, stopped his car in the left lane to allow [plaintiff], who was still standing off the side of the road in Foschini Park, to cross East Salem Street Extension.
>
> While [plaintiff] remained standing in Foschini Park, at or about 10:54 a.m., a Toyota Avalon vehicle driven by Miguel Bueno, also in the left lane swerved to his right to avoid striking the Honda vehicle, and in so doing, lost control of his car, and drove off the road and struck [plaintiff], causing her to sustain severe injuries.

According to Allen Farnham, driver of the Honda, he noticed plaintiff when she was standing in the asphalt area of the walkway, behind the white line which separated the street from the walkway. Officer Timothy Sroka testified that he could not "recall a specific date or time that [he] could reference that [he] saw someone actually cross" at the location where plaintiff was injured.

4

Plaintiffs sued the City, County of Bergen, New Jersey Department of Transportation, and the State of New Jersey (collectively defendants).[1] Plaintiffs alleged that "the Salem Street Extension at the subject location was in a dangerous condition by virtue of the absence of in-street pedestrian warning signs and designated pedestrian right-of way/crosswalks, as well as adequate speed limits . . . ." Plaintiffs asserted defendants knew of the dangerous condition for a significant time before her accident. Plaintiffs further alleged that even though defendants knew of the dangerous condition, they "carelessly, recklessly, and negligently maintain[ed], repair[ed], manag[ed], control[ed], operat[ed], inspect[ed] and/or supervis[ed] [the] Salem Street Extension at or near the subject location," thus breaching their duties to plaintiffs. Plaintiffs further alleged that, due to defendants' breach and actions/omissions, plaintiff sustained severe and permanent injuries.

The City moved to dismiss under Rule 4:6-2(e), alleging plaintiffs failed to state a claim. The trial court denied the motion.

"During discovery, plaintiffs served four expert reports from Nicholas Bellizzi, P.E.: the initial expert report on December 28, 2023; the first

---

[1] Plaintiffs settled their claims against Farnham and Bueno prior to initiating the current suit.

A-2548-24

supplemental report on March 27, 2024; the second supplemental report on April 21, 2024; and the third supplemental report on August 7, 2024." Plaintiffs served the last two reports after the close of discovery without objection from the City. Initially, the City served only one expert report from David M. Caruoso, P.E., on February 29, 2024.

Arbitration took place immediately after the discovery end date of April 2, 2024. Following arbitration, plaintiffs voluntarily dismissed their claims against Bergen County. On May 15, 2024, the City moved to reopen and extend discovery, under Rule 4:24-1 to -3, solely to complete an accident reconstruction report. The City alleged the completion of the report was "essential" since "the theories of liability alleged against the City have changed and evolved" throughout the proceedings. Plaintiffs opposed the motion, asserting the City had shown no exceptional circumstances to justify the court reopening discovery. The trial court found that reopening discovery for the City to complete this report was "necessary and in the interests of justice," and granted the City's motion. The City served an accident reconstruction and traffic engineering report prepared by John A. Desch, P.E.

On July 1, 2024, plaintiffs moved to reconsider the trial court's order to reopen discovery. Plaintiffs asserted the City's motion was improperly granted

because: it was not timely served; it was not filed in accordance with Rule 4:24-1(c); and it did not demonstrate exceptional circumstances. The trial court found the City's motion to reopen discovery "was in accord with the practice in this case and really what this case needed from a discovery standpoint," and denied the motion. Noting that plaintiffs had filed supplemental expert reports after the discovery end date, the court found the case had been moving "in a fairly complicated factual matrix" where different theories were advocated and evolved. Also, the court found its June 11, 2024 order gave plaintiffs ample time to respond and did not prejudice them.

The City then moved for summary judgment, asserting that they had "absolute immunity" in the matter. The City spelled out three theories: an immunity for placement or non-placement of traffic signals, road signals, etc. under N.J.S.A. 59:4-5; an immunity for conditions of parkland under the LLA; and immunity under the TCA, for plaintiffs' "failure to generate disputes of material fact regarding the five conjunctive requirements" of N.J.S.A. 59:4-2.

The trial court granted defendant's motion for summary judgment. The trial court, relying on Weiss v. N.J. Transit, 128 N.J. 376 (1992), and Kolitch v. Lindedahl, 100 N.J. 485 (1985), found the City had partial immunity under N.J.S.A. 59:4-5, since plaintiffs' claims include those for "failure to have a

crosswalk, warning sign, or signal as to the danger in the area." The court then found plaintiffs' theories of improper location and lack of safe egress were not barred under N.J.S.A. 59:4-5, nor did their theory implicate design or plan immunity under the TCA.

The trial court then turned to whether plaintiffs could establish liability under N.J.S.A. 59:4-2. The court first found, under King by King v. Brown, 221 N.J. Super. 270 (App. Div. 1987), plaintiffs could not "establish a dangerous condition existed at the end of the Foschini Park pathway." The court next found "[n]othing intrinsic to the park or the path brought" about plaintiff's injuries, and that this incident "occurring at this specific location is no more probable than a similar event occurring at many locations adjacent to roadways throughout New Jersey." The court then found plaintiff failed to show a dangerous condition.

Considering proximate cause, the court found

> the alleged dangerous condition of the pathway did not create a reasonabl[y] foreseeable risk a pedestrian would be struck by a driver swerving off the road to avoid hitting another vehicle.
>
> The location of the accident was not more dangerous than any sidewalk or other location . . . adjacent to a roadway. . . . That it occurred at this location does not demonstrate a . . . dangerous condition.

A-2548-24

The court further found plaintiffs failed to establish that the City had constructive notice of the dangerous condition. The court also found that the "DANGER ROAD AHEAD" signs posted along the pathway "[did] not establish that some physical attribute of the path created a substantial risk of injury when used with due care."

Turning to the LLA, the court found:

> Plaintiff's testimony supports that she was . . . engaging in recreational activity at the time of the incident. She was not merely using Foschini Park . . . as a method for transportation between . . . locations, but rather enjoyed the park for the break between her next ice skating [session]. Those enjoying the benefit of the land for recreational purpose[s] are therefore subject to the [LLA].

The trial court then granted the City's motion for summary judgment, making findings in its oral statement of reasons. The court entered judgment for all defendants and dismissed plaintiffs' complaint with prejudice. Plaintiffs appealed.

On appeal, plaintiffs contend that the court misapplied the law under both the TCA and the LLA. Further, plaintiffs argue the court abused its discretion in denying their motion for reconsideration of its order reopening and extending discovery for the City.

9

## II.

We review a trial court's grant of a summary judgment motion de novo. Christakos, 262 N.J. at 467.  A motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting R. 4:46-2(c)).

We review a judge's denial of a motion for reconsideration of an interlocutory order following Rule 4:42-2.  State v. Keogh, 481 N.J. Super. 67, 84 (App. Div. 2025).  A trial court has an "inherent power[,] to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment."  Ibid. (alteration in original) (quoting Lombardi v. Masso, 207 N.J. 517, 534 (2011)).  Thus, "[u]ntil entry of final judgment, only 'sound discretion' and the 'interest of justice' guides the trial court, as Rule 4:42-2 expressly states."  Ibid. (quoting Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021)).

III.

A.

We first consider whether the court erred in granting the City summary judgment under the TCA.

"[T]he 'guiding principle' of the [TCA] is 'that "immunity from tort liability is the general rule and liability is the exception."'" Est. of Massi v. Barr, 479 N.J. Super. 144, 156 (App. Div. 2024) (quoting D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013)).

Under the TCA, Chapter 4 codifies "generally applicable premises liability law" and applies it to public entities. Margolis & Novack, Title 59: Claims Against Pub. Entities, cmt. 1 on N.J.S.A. 59:4-1 (2026). In order to plead a prima facie case under the TCA, plaintiff must show: (1) the area of East Salem Street and Foschini Park where she was injured was in a "dangerous condition" at the time the accident occurred; (2) her injury was proximately caused by the "dangerous condition"; (3) the "dangerous condition" created a reasonably foreseeable risk of the kind of injury plaintiff incurred; (4) that the public entity had actual or constructive notice of the "dangerous condition"; and (5) that the City's action or inaction was "palpably unreasonable." N.J.S.A. 59:4-2. The elements of N.J.S.A. 59:4-2 are "accretive; if one or more of the

elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail." Stewart v. N.J. Tpk. Auth., 249 N.J. 642, 656 (2022) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 585 (2008)).

Generally, the question of whether a property is in a "dangerous condition" is left for the finder of fact. Est. of Massi, 479 N.J. Super. at 158. However, the question is still "subject to the court's assessment whether it can reasonably be made under the evidence presented." Ibid. (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). In the context of summary judgment, a judge "must examine the issue 'pragmatically' to determine whether the particular irregularities complained of 'were such that reasonable minds could differ as to whether they manifested that the [roadway] was in a dangerous condition.'" Ibid. (quoting Polyard v. Terry, 160 N.J. Super. 497, 509 (App. Div. 1978)).

We consider the first factor under N.J.S.A. 59:4-2, whether the Park's pathway at East Salem Street was a "dangerous condition."

A "dangerous condition" is defined as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).

We have held "a 'substantial risk' is 'one that is not minor, trivial or insignificant.'" Est. of Massi, 479 N.J. Super. at 157 (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). We have long understood that a "dangerous condition" under N.J.S.A. 59:4-1(a) refers to "the 'physical condition of the property itself and not to activities on the property.'" Levin v. Cnty. of Salem, 133 N.J. 35, 44 (1993) (quoting Sharra v. City of Atlantic, 199 N.J. Super. 535, 540 (App. Div. 1985)). A "dangerous condition" does not "reach the reasonably foreseeable negligent actions or criminal activities of third parties that have caused plaintiff's injuries." Margolis & Novack, cmt. 2(a)(ii) on N.J.S.A. 59:4-1.

Plaintiffs assert the pathway "constituted a danger to the public when used in its normal, foreseeable manner," and that plaintiff was using the pathway in its normal, foreseeable manner when the accident occurred. To support their claim, plaintiffs rely on the opinion of their expert engineer, Bellizzi. Bellizzi opined the park's pathway was a "dangerous condition," stating:

> The park's path, which was used by . . . "pedestrians" . . . , terminated at Salem Street at a location where Salem Street had no crosswalk to cross Salem Street from north to south, no sidewalk and no paved shoulder wide enough for use by "pedestrians" to go either east or west to the nearest crosswalks which were not located in proximity to this mid-block location. This, in effect, was a trap to these

13

"pedestrian" users with no safe way to cross Salem Street.

Further, Bellizzi opined that while there were two metal bollards at the end of the pathway, these were placed to "prevent vehicles from turning into the park's path." Noting that there was no similar protection for pedestrians, he opined that the lack of similar protections exposed pedestrians to dangers associated with vehicle and pedestrian conflicts.

We find our decision in Ross v. Moore, 221 N.J. Super. 1 (App. Div. 1987) instructive. In Ross, the plaintiff was injured crossing a county road to get to her class, when she was struck by a vehicle. Id. at 4. The plaintiff was forced to cross the road as there were no available parking spots at the school, and she had to park in a shopping center lot across the street. Ibid. As a result, the plaintiff sued the school under the TCA, alleging the public property owned and operated by the school was left in a dangerous condition and was the proximate cause of her injuries. Id. at 4-5. The trial court granted the school summary judgment and the plaintiff appealed, asserting the school property was left in a dangerous condition due to the lack of parking spaces, and that it was reasonably foreseeable that students unable to find parking at the school would park at the shopping center across the street and ultimately illegally cross the road to get to class. Id. at 5. On appeal, we declined to adopt the plaintiff's argument,

14

concluding that to "premise governmental liability for a dangerous condition of property upon a dangerous activity by a third party somewhere off the property," was "not authorized under [the TCA] or decisional law." Ibid.

We analyze the matter before us.

Plaintiffs' arguments fail under our TCA jurisprudence. Here, the pathway itself was not a dangerous condition. Like Ross, plaintiff was injured due to a dangerous activity by a third party outside Foschini Park, not because of any condition of the pathway. We agree with the trial court's finding that "[t]he location of the accident was not more dangerous than any sidewalk or other location . . . adjacent to a roadway. . . . That [the accident] occurred at this location does not demonstrate a . . . dangerous condition." While the pathway led plaintiff to the edge of East Salem Street, her placement there did not cause her injuries. The record shows that Bueno, driving negligently on East Salem Street, caused plaintiff's injuries.

Since plaintiff cannot demonstrate that the area of East Salem Street and Foschini Park where she was injured was a "dangerous condition" at the time the accident occurred, her entire TCA claim against the City must fail. See Stewart, 249 N.J. at 656. The trial court properly granted summary judgment under the TCA.

B.

We now turn to plaintiffs' argument that the trial court erred in granting summary judgment to the City under the LLA. Plaintiffs argue the trial court misapplied the LLA by failing to acknowledge precedent which states the Act does not apply to the City under these circumstances. We are unpersuaded.

The LLA exempts an owner, lessee, or occupants of property from tort liability to persons who use the property for sport or recreational activities, unless the owner, lessee, or occupant charges a fee to persons who use the property for those purposes. N.J.S.A. 2A:42A-3 to -4. The Legislature intended for the LLA to be liberally construed to encourage landowners to welcome persons on their land for sport and recreation without fear of liability for any injuries incurred while on the land. N.J.S.A. 2A:42A-5.1; see also L. 1991, c. 496, § 3.

When determining whether the subject property qualifies for immunity under the LLA, we must look at the "dominant character of the land." Arias v. Cnty. of Bergen (Arias I), 479 N.J. Super. 268, 288 (App. Div. 2024), aff'd Arias v. Cnty. of Bergen (Arias II), 262 N.J. 479 (2026). In considering this question, we have held that land aligns with the LLA's definition of "sports and recreational activities" when the activities "can be accommodated, under normal

16

conditions, only upon large sized tracts of rural or semi-rural lands, or other lands having similar characteristics." Ibid. (quoting Harrison v. Middlesex Water Co., 80 N.J. 391, 400 (1979)). In Arias I, we concluded immunity extended to Bergen County because the park in which the plaintiff was injured while rollerblading "offer[ed] general public access to picnic areas, playgrounds, pavilions, athletic fields, wooded areas, bicycling and walking paths, and a dog park – without charging a fee." Id. at 289. We concluded that the park's dominant character was a space for sport and recreational activities, rendering the County, as its owner, entitled to the LLA's protections. Ibid.

Plaintiffs argue that Harrison compels us to reverse the trial court. In Harrison, our Supreme Court employed a four-part test to determine if the subject land met the definitions under the LLA. 80 N.J. at 401, 403. It examined four factors: (1) "the use for which the land is zoned"; (2) "the nature of the community in which it is located"; (3) "its relative isolation from densely populated neighborhoods"; and (4) "its general accessibility to the public at large." Id. at 401. We view Harrison, however, through the lens of Arias I.

In Arias I, we considered the Legislature's 1991 amendment of the LLA, completed twelve years after Harrison, and our decision in Toogood. We then concluded that the four-part test in Harrison "is incongruous with the 'dominant

17                                                                    A-2548-24

character' of the land analysis under <u>Toogood v. St. Andrews at Valley Brook Condo. Ass'n</u>, 313 N.J. Super. 418, 425-26 (App. Div. 1998), in determining whether a specific 'premises' is entitled to immunity under the LLA." 479 N.J. Super. at 285-86 (citation reformatted). Our Supreme Court affirmed these findings, concluding that the Legislature's 1991 amendments deem the <u>Harrison</u> factors no longer relevant, nor determinative in assessing the dominant character of the land. <u>Arias II</u>, 262 N.J. at 492. Therefore, the trial court was not required to apply the <u>Harrison</u> four-part test.

While the trial court did not expressly articulate the "dominant character" analysis, the record is clear as to why Foschini Park is a premises protected under the LLA. Foschini Park has a playground, baseball fields, pedestrian walkways, is free to the public, and, by plaintiff's own admission, she watched her students exercise there. The dominant character of Foschini Park closely resembles that of the park in <u>Arias I</u>. We hold that Foschini Park falls within the protective ambit of the LLA.

We now consider whether plaintiff used the land for sport or recreation. N.J.S.A. 2A:42A-3. N.J.S.A. 2A:42A-2 defines "sport and recreational activities" as:

> hunting; fishing; trapping; horseback riding; training of dogs; hiking; camping; picnicking; swimming; skating;

18

> skiing; sledding; tobogganing; operating or riding snowmobiles; all-terrain vehicles or dirt bikes; and any other outdoor sport, game and recreational activity including practice and instruction in any of these activities.

In keeping with the liberal application of the statute, our Supreme Court concluded that activities akin to those expressly mentioned in the statute can also be covered. Arias I, 262 N.J. at 490-92 (holding rollerblading is akin to "skating" as contemplated by the Legislature for which the landowner will enjoy immunity).

The trial court found plaintiff engaged in recreational activity in Foschini Park when she walked through and enjoyed the park during a break between ice skating sessions. It found plaintiff did not simply use the park to transit between destinations, but used the open space to walk on the pedestrian pathways and enjoyed the benefit of the land for recreation pursuant to the statute. We take judicial notice of the undisputed fact that walking is a form of exercise. It follows that a person out for a walk while enjoying a break in the park fits within a common understanding of recreation. It also follows that plaintiff's activities conducted within the park in the moments leading to her accident are covered by the LLA. The trial court properly granted summary judgment under the LLA.

19

## C.

Finally, we consider whether the trial court's order denying plaintiffs' motion for reconsideration was in the interests of justice.

On May 15, 2024, the City moved to reopen and extend discovery. The trial court granted the motion, but plaintiffs argue the City failed to comply with the timeliness requirements of Rule 4:24-1(c). Plaintiffs further argue that even if the City timely filed its motion, it failed to show exceptional circumstances. We disagree.

Rule 4:24-1(c) provides that "[a] consensual extension of discovery must be sought prior to the expiration of the discovery period. . . . No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." Requests to re-open discovery after an arbitration or trial date has been fixed should be granted if the moving party meets its burden to demonstrate exceptional circumstances. Szalontai v. Yazbo's Sports Cafe, 183 N.J. 386, 396 (2005). Exceptional circumstances are found when the movant demonstrates:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the

circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Hollywood Cafe Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 217 (emphasis omitted) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005)).]

However, if the movant requests to reopen or extend discovery after arbitration has taken place, exceptional circumstances may only be found if the movant demonstrates that the circumstances are not that of his own poor diligence in performing discovery. Szalontai, 183 N.J. at 397.

Here, the discovery end date was April 2, 2024. Arbitration was scheduled for and took place on May 2, 2024. On April 21, 2024, plaintiffs submitted a supplemental expert engineering report attesting to the City's actual notice of a dangerous condition. The City filed its motion to re-open and extend discovery on May 15, 2024, after arbitration concluded. Before the return date on the City's motion to extend, the court scheduled trial for September 9, 2024.

During the reconsideration motion, the trial court found that plaintiffs' theory of premises liability evolved significantly over time, and that it would be unfair to bar the City's supplemental expert report. The court found plaintiff was not prejudiced, as she had ample time to respond, and that the City had demonstrated exceptional circumstances.

21

We conclude that that the court's finding of exceptional circumstances was sufficiently supported in the record. First, the City's supplemental report was delayed due to plaintiffs' submission of multiple expert reports which modified their theories of liability over the course of the litigation. Second, discovery was closed by the time the City learned of plaintiffs' new theory, and thus it could not request an extension earlier. Third, the City's supplemental expert report addressed the central issue in the case: who was liable for plaintiff's injuries.

The trial court found exceptional circumstances present pursuant to Rule 4:24-1(c), and reasonably concluded that granting the extension was in the interests of justice. Recognizing that plaintiffs filed an expert report after the conclusion of discovery, the trial court extended the same opportunity to the City.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2548-24